CASE NO. 22-15275
(CONSOLIDATED WITH CASE NOS. 22-15355, 22-15363, & 22-15579)

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

———————

ASHOK BABU, ET AL.

*Plaintiffs and Appellees,*

KEENAN G. WILKINS A/K/A NERRAH BROWN, ET AL.

*Objectors and Appellants.*

v.

GREGORY AHERN, ET AL.

*Defendants and Appellees,*

———————

Appeal from the United States District Court,
Northern District of California, Case No. 5:18-cv-07677-NC
Hon. Nathanael M. Cousins

———————

## ALAMEDA COUNTY APPELLEES' ANSWERING BRIEF

———————

GREGORY B. THOMAS
TEMITAYO O. PETERS
BURKE, WILLIAMS & SORENSEN, LLP
  1901 Harrison Street, Suite 900
Oakland, CA 94612-3501
Telephone: (510) 273-8780
Facsimile: (510) 839.9104
gthomas@bwslaw.com

HANSON BRIDGETT LLP
PAUL B. MELLO
ADAM W. HOFMANN
SAMANTHA D. WOLFF
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:   (415) 777-3200
Facsimile:    (415) 541-9366
ahofmann@hansonbridgett.com

*Attorneys for County of Alameda; Yesenia Sanchez, in her official capacity as
Sheriff of Alameda County; Karyn Tribble in her official capacity as
Director of the Alameda County Behavioral Health Care Services Agency*

19267489.11

## CORPORATE DISCLOSURE STATEMENT

Defendants and appellees County of Alameda; Yesenia Sanchez, in her official capacity as Sheriff of Alameda County; Karyn Tribble in her official capacity as Director of the Alameda County Behavioral Health Care Services Agency are, respectively, a government organization existing under the laws of the State of California and two individuals sued in their official capacities within that government organization. Accordingly, there are no disclosures required under Fed. R. App. P. 26.1.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT ........................................ 2

INTRODUCTION ............................................................................. 12

JURISDICTIONAL STATEMENT ................................................... 14

STATEMENT REGARDING PRIMARY AUTHORITIES ................. 14

STATEMENT OF THE CASE .......................................................... 15

     A.    Defendants operate and control Santa Rita Jail, which houses both state and federal inmates. ............................... 15

     B.    A group of individuals incarcerated at Santa Rita Jail file a class action suit in the district court alleging violations of state and federal law. ...................................... 16

     C.    After extensive negotiations, the parties agree to settle by Consent Decree, which the district court preliminarily approves. ....................................................... 18

     D.    The district court solicits both written and oral objections to the Consent Decree to ensure all parties, and the community, can voice concerns. ............................. 21

     E.    After analyzing all written and oral objections, the district court grants approval of the Consent Decree. ......... 22

SUMMARY OF ARGUMENT ................................................... 26

STANDARD OF REVIEW ....................................................... 32

ARGUMENT ........................................................................... 33

I.    Mr. Wilkins and the Non-Profit Appellants each lack standing to challenge the parties' settlement, and their appeals should be dismissed. ........................................... 33

II.    Appellants' various procedural objections lack merit. ................ 37

     A.    Notice to the class was adequate, and Inmate Appellants' demand for notice to unidentified persons who might become class members in the future is unreasonable and impracticable. .......................................... 37

3

B.    Contrary to the arguments of the Non-Profit Appellants—which themselves represent no member of the class—the named plaintiffs had standing.......................40

C.    Non-Profit Appellants' challenge to Judge Cousins is also meritless and contradicted by published precedent in both this Court and other circuits. ...................................41

D.    The Non-Profit Appellants also fail to demonstrate reversible error from the absence of a settlement administrator. ........................................................................45

III.  Judge Cousins correctly approved the consent decree, and none of the Appellants have shown an abuse of discretion...........47

A.    The district court properly assessed whether Class Counsel adequately represented the Class. ..........................50

B.    Appellants have not shown reversible error in the district court's determination that the named class members adequately represented the class.........................55

C.    The district court rightly found that the Consent Decree resulted from arms' length negotiations, supervised by a magistrate judge, with the approval of the DOJ. ...............................................................................60

D.    Appellants have not shown any abuse of discretion in the district court's determination that the relief afforded class members was adequate and equitable. .........62

      1.    Evidence supported the district court's findings regarding the benefits the Consent Decree conferred on the Class and Sub-class. ..........................63

      2.    The district court did not abuse its discretion in finding that the Consent Decree provided meaningful relief to the Class and Sub-Class. ............65

      3.    The district court also correctly found no collusion or overreaching in the settlement................................72

E.    Appellants are wrong when they argue that the Consent Decree inequitably favors the Sub-Class. ..............75

19267489.11

F.    The district court adequately evaluated and
      appropriately responded to the objections submitted. ......... 80

CONCLUSION .......................................................................................... 85

STATEMENT OF RELATED CASES ..................................................... 86

CERTIFICATION OF COMPLIANCE .................................................... 87

ADDENDUM OF PRIMARY AUTHORITIES 9th Cir. Rule 28-2.7 ...... 88

5

19267489.11

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*A. B. v. Hawaii State Dep't of Ed.*,
  30 F.4th 828 (9th Cir. 2022) ............................................................ 39

*United States ex rel. Alexander Volkhoff, LLC v. Janssen*
  *Pharmaceutica N.V.I*,
  945 F.3d 1237 (9th Cir. 2020) .......................................... 26, 34, 35, 36

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 (1997) ............................................................ 37, 59, 60

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2021) ........................................................ 32, 49

*Beech Aircraft Corp. v. U.S.*,
  51 F.3d 834 (9th Cir. 1995) ..................................................... 53, 54, 64

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................................... 74, 75, 76

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) .......................................... 32, 60, 62, 76

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..................................................... *passim*

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) ................................................. 73

*Citibank Int'l v. Collier-Traino, Inc.*,
  809 F.2d 1438 (9th Cir. 1987) ........................................................ 36

*Day v. Persels & Assocs., LLC*,
  729 F.3d 1309 (11th Cir. 2013) ....................................................... 45

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) .......................................................... 56

19267489.11

*Frank v. United Airlines, Inc.*,
   216 F.3d 845 (9th Cir. 2000)..............................................................38

*Han v. Stanford Univ.*,
   210 F.3d 1038 (9th Cir. 2000)..........................................................53

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998).....................................................*passim*

*Hansberry v. Lee*,
   311 U.S. 32 (1940)..............................................................................38

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010).......................................................56, 57

*Hilao v. Estate of Marcos*,
   393 F.3d 987 (9th Cir. 2004)..............................................26, 35, 36

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019)............................................................49

*Koby v. ARS Nat'l Servs., Inc.*,
   846 F.3d 1071 (9th Cir. 2017)......................................................*passim*

*Marino v. Ortiz*,
   484 U.S. 301 (1988)...........................................................................33

*Maywalt v. Parker & Parsley Petroleum Co.*,
   67 F.3d 1072 (2d Cir. 1995) .............................................................84

*McAdams v. Robinson*,
   26 F.4th 149 (4th Cir. 2022) ............................................................45

*McKinney-Drobnis v. Oreshack*,
   16 F.4th 594 (9th Cir. 2021) ............................................................48

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982)............................................................33

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)...........................................................................38

19267489.11

*R&W Tech. Servs., Ltd. v. Commodity Futures Trading Comm'n,*
  205 F.3d 1365 (5th Cir. 2000) ............................................................ 35

*Reynolds v. Beneficial Nat'l Bank,*
  288 F.3d 277 (7th Cir. 2002) .............................................................. 84

*Roell v. Withrow,*
  538 U.S. 580 (2003) ...................................................................... 43, 44

*Roes, 1-2 v. SFBSC Mgmt., LLC,*
  944 F.3d 1035 (9th Cir. 2019) ...................................................... 39, 66

*S. Cal. Edison Co. v. Lynch,*
  307 F.3d 794 (9th Cir. 2002) .............................................................. 34

*Sackett v. U.S. Env't Prot. Agency,*
  8 F.4th 1075 (9th Cir. 2021) ......................................................... 43, 44

*San Francisco NAACP v. San Francisco Unified Sch. Dist.,*
  59 F. Supp. 2d 1021 (N.D. Cal. 1999) ................................................ 36

*Saucillo v. Peck,*
  25 F.4th 1118 (9th Cir. 2022) ............................................................ 50

*Staton v. Boeing Co.,*
  327 F.3d 938 (9th Cir. 2003) ...................................................... *passim*

*Torrisi v. Tucson Elec. Power Co.,*
  8 F.3d 1370 (9th Cir. 1993) ................................................................ 83

*United States v. Badger,*
  930 F.2d 754 (9th Cir. 1991) .............................................................. 35

*United States v. Kovall,*
  857 F.3d 1060 (9th Cir. 2017) ............................................................ 34

*Vargas v Lott,*
  787 F. App'x 372 (9th Cir. 2019) ....................................................... 74

19267489.11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod.*
*Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017)...................................... *passim*

*Washoe Tribe of Nevada v. Greenley*,
674 F.2d 816 (9th Cir. 1982)............................................... 35

*Williams v. Gen. Elec. Capital Auto Lease, Inc.*,
159 F.3d 266 (7th Cir.1998)............................................... 45

*Wittmayer v. U.S.*,
118 F.2d 808 (9th Cir. 1941)............................................. 53, 54, 64, 65

**Federal Laws**

Constitution of the United States

    Eighth Amendment ................................................................ 16

    Fourteenth Amendment .................................................... 16

United States Code, Title 18

    § 3626 ............................................................. 20, 23, 24, 25

United States Code, Title 28

    § 636 ................................................................................ 42

    § 1291 .............................................................................. 14

    § 1331 .............................................................................. 14

    § 1343 .............................................................................. 14

United States Code, Title 29

    § 705 ................................................................................ 17

United States Code, Title 42

    § 12102 ............................................................................ 17

19267489.11

**California Laws**

California Constitution, Art. I,

§ 7 ................................................................................ 17

§ 17 .............................................................................. 17

California Government Code

§ 11135 ........................................................................ 17

§ 12926 ........................................................................ 17

**Rules**

Federal Rules of Appellate Procedure,

Rule 3 ..................................................................... 26, 33

Federal Rules of Civil Procedure

Rule 23 .................................................................... 48, 62

Rule 23(a) ..................................................................... 56

Rule 23(e) ............................................................... *passim*

Rule 23(e)(1) ............................................................. 27, 37

Rule 23(e)(2) .................................................................. 29

Rule 23(e)(2)(A) ............................................................. 50

Rule 23(e)(2)(B) ............................................................. 60

Rule 23(e)(2)(C) ............................................................. 62

Rule 23(e)(2)(C)(i) ......................................................... 68

Rule 23(e)(2)(D) ............................................................. 75

Rule 25(d) ..................................................................... 12

10

Rule 73 ........................................................................... 42, 43

Ninth Circuit Rules,

Rule 28-2.7 ................................................................ 14, 15, 16

Rule 28-2.8 ........................................................................ 53

19267489.11

**INTRODUCTION**

In 2018, a group of individuals incarcerated in Alameda County's Santa Rita Jail filed a federal class action against the County, its Sheriff Yesenia Sanchez, and the director of its Behavioral Health Care Services Agency, Karyn Tribble.[1]  These "Class Representatives" alleged that the County was providing legally inadequate mental-health care to all inmates at Santa Rita Jail, with even greater deficiencies as it related to those inmates with psychiatric disabilities.  They sought exclusively injunctive relief to change the conditions of incarceration at Santa Rita Jail.  The case led to years of litigation, including certification of a "Class" of all persons who are incarcerated at Santa Rita Jail, now and in the future, and a "Sub-Class" of all such persons having psychiatric disabilities, as well as extensive discovery and investigations by "Class Counsel," independent experts, the U.S. Department of Justice, and negotiations supervised by Magistrate Judge Laurel Beeler.

---

[1] When this case was filed, Alameda County's Sheriff was Gregory J. Ahern, and its Behavioral Health Care Services Agency Director was Carol Burton.  The new Sheriff and Director have been substituted in to this case pursuant to Fed. R. Civ. P. 25(d).

In the end, a settlement was reached, and the district court approved that "Consent Decree" after review of the underlying evidence and extensive solicitation of objections by class members. As the district court found, the Consent Decree provides meaningful relief to members of both the Class and Sub-Class to address the concerns raised by the Class Representatives.

Several groups of objectors, however, seek to undo that settlement. These "Appellants" contend that the district court should have taken their objections more seriously, that the County should have given up more, and that Class Counsel should have received less for their work. But none of their arguments demonstrate an abuse of discretion by the district court in approving the Consent Decree to resolve this case; they demonstrate neither a failure to follow applicable legal standards, nor clear error in the district court's factual findings.

This Court should affirm, and allow the County and Class Counsel to continue implementing the Consent Decree for the benefit of individuals incarcerated at Santa Rita Jail.

19267489.11

## JURISDICTIONAL STATEMENT

This appeal arises from a class action filed in the U.S. District Court for the Northern District of California by persons incarcerated in Alameda County's Santa Rita Jail, alleging violations of various federal laws and seeking related injunctive relief. 19-ER-4641–4699. The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343.

The case resulted in a February 7, 2022 judgment, following the district court's approval of a consent decree negotiated by the parties. 1-ER-2–13. Notices of appeal were filed by Keenan Wilkins on February 15, by a group of persons incarcerated at Santa Rita Jail (collectively "Incarcerated Appellants") on March 7, by a group of non-profit organizations (collectively, "Non-Profit Appellants") on March 7, and by Reginald Robertson on March 23. The Court later consolidated the four appeals and has jurisdiction over the consolidated appeals under 28 U.S.C. § 1291.

## STATEMENT REGARDING PRIMARY AUTHORITIES

Pursuant to 9th Circuit Rule 28-2.7, pertinent statutes are set forth verbatim in an indexed addendum attached hereto.

19267489.11

## STATEMENT OF THE CASE

### A.    Defendants operate and control Santa Rita Jail, which houses both state and federal inmates.

The County operates the Santa Rita Jail in Dublin, California.

17-ER-4252.  Santa Rita Jail ranks as the third largest jail facility in

California and the fifth largest in the nation.  *Id.*  It houses all County

inmates in all classification levels as well as federal inmates pursuant

to a contract with the U.S. Marshal's Office.  17-ER-4269.

In connection with its operation of Santa Rita Jail, the County

provides mental health care at Santa Rita through the Alameda County

Behavioral Health Care Services Agency. 17-ER-4254.  It offers

detainees and inmates a variety of mental-health programs, services,

and activities, including medication management, one-on-one clinical

appointments, and suicide prevention programs.  17-ER-4254–55.  In

order to provide these services, Defendants utilize centralized policies

for staff, including those that govern intake and assessment, tracking,

mental-healthcare requests, case management, treatment planning,

admission and discharge, suicide prevention, mental-health crisis care,

medication management and monitoring, use of restraints and

seclusion, and maintenance of records.  17-ER-4255.

15

19267489.11

**B.** **A group of individuals incarcerated at Santa Rita Jail file a class action suit in the district court alleging violations of state and federal law.**

On December 21, 2018, Class Representatives, current and former inmates at Santa Rita, filed the action below, alleging that the County failed to provide minimally adequate mental health care and conditions of confinement at Santa Rita Jail. 19-ER-4641–99. Specifically, they alleged that due to understaffing, poor management, and lack of treatment space, the County excessively relied on the use of isolative settings to manage inmates, including inmates with significant disabilities and mental-health needs. 19-ER-4642. Class Representatives alleged that the County's policies resulted in the placement of inmates in restrictive housing units without sufficient cause or due process and in conditions which created a substantial risk of serious harm in violation of the California and U.S. Constitutions. 19-ER-4642–43. They further alleged that the County's policies resulted in a disproportionate placement of people with mental illnesses in segregated, restrictive settings without equal access to programs, services, and activities, in violation of federal and state disability laws. *Id.* They asserted claims for violations of the Eighth and Fourteenth

16

Amendments of the U.S. Constitution, Article I, Sections 7 and 17 of the California Constitution, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and California Government Code § 11135, *et seq.* 19-ER-4687–98.

With these claims, Class Representatives sought certification of two classes: (1) "All adults who are now, or in the future will be, incarcerated in the Alameda County Jail ('Inmate Class')" and (2) "All qualified individuals with a psychiatric disability, as that term is defined in 42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(j) and (m), and who are now, or will be in the future, incarcerated in the Alameda County Jail ('Disability Subclass')." 17-ER-4255–56.

In February 2019, the parties consented to proceed before United States Magistrate Judge Nathanael Cousins. 19-ER-4639, 4640. They were also ordered to conduct a settlement conference supervised by Magistrate Judge Laurel Beeler. 17-ER-4331, 18-ER-4407. Then, in December 2019, the parties submitted a joint motion seeking certification of the Class and Sub-Class, which the district court granted in January 2020. 17-ER-4237–39, 4245–67.

19267489.11

### C. After extensive negotiations, the parties agree to settle by Consent Decree, which the district court preliminarily approves.

In order to reach a settlement, the Parties agreed to retain a panel of Joint Experts to evaluate the policies, procedures, practices, and conditions in the Jail and to complete reports with their findings.  12-ER-2823.  These experts—in the areas of classification, ADA, custodial practices, and mental health—toured Santa Rita Jail on multiple occasions, interviewed staff and inmates, and reviewed extensive documents, including policies, procedures, training materials, mental-health records, and records relating to programming, out-of-cell time, and classification.  12-ER-2845.  The parties then extensively negotiated the terms of a proposed settlement to address the experts' findings.  *Id*.

After the Class and Sub-Class were certified, and while the parties were negotiating a resolution, the COVID-19 pandemic struck resulting in COVID-19 cases among the Class.  12-ER-2845.  The Parties met and conferred about these new circumstances, and the County retained an outside expert to conduct spot checks related to COVID-19 policies beginning in May 2020.  *Id*.  On July 29, 2020, Class

18

Representatives moved to amend their complaint to include allegations concerning COVID-19 policies and practices, which was granted in August 2020. 12-ER-2845, 3039–3108.

After assessing the findings of the Joint Experts, engaging in numerous in depth discussions, and conducting extensive discovery, the parties reached a settlement agreement with the supervision of Judge Beeler. 11-ER-2811–12, 12-ER-2816–35. Class Representatives filed an "Unopposed Motion for Preliminary Approval of Consent Decree" in August 2021. 12-ER-2816–35. In that motion, Class Representatives expressly noted that "[t]he proposed Consent Decree provides comprehensive injunctive relief to the certified class of all adults [] and the certified subclass of all qualified individuals with a psychiatric disability [] incarcerated in the Jail, while eliminating the risk of duplicative litigation." 12-ER-2821. They also noted that the Consent Decree included "effective mechanisms" for reporting, monitoring, and dispute resolution which included a team of joint neutral experts that would monitor Defendants' compliance. *Id*. The parties also engaged in separate negotiations regarding an award of attorney fees and costs to Class Counsel, *after* they reached an agreement on injunctive relief. 12-

19

ER-2824. In support of the award, Class Counsel briefed the district court on the time and resource-intensive process that led to the joint agreement and resolution of the action. 12-ER-2816–35.

Through the Consent Decree, the County agreed to implement the measures set forth, subject to monitoring and, if necessary, enforcement by the District Court. 11-ER-2811–12. In exchange, the Consent Decree was intended to resolve all claims raised in this case. 11-ER-2811–12, 12-ER-2845. Indeed, the parties believed the Consent Decree was fair, reasonable, and adequate to protect the interests of all Class and Sub-Class members. *Id*. Critically, each party to the Consent Decree was represented by experienced counsel during its negotiation and execution. *Id*. The Parties further stipulated that the Consent Decree complied in all respects with the provisions of 18 U.S.C § 3626(a) and that the prospective relief in the Consent Decree was narrowly drawn, extended no further than necessary to correct the violations of federal rights identified by the Parties, was the least intrusive means necessary to correct those violations, and would not have an adverse impact on public safety or the operation of a criminal justice system. *Id*.

19267489.11

The district court granted the unopposed motion for preliminary approval of the Consent Decree in September 2021. 11-ER-2773–76. In its order, the district court noted that the Consent Decree was "the product of arms'-length, serious, informed, and non-collusive negotiations between experienced and knowledgeable counsel who have actively prosecuted and defended this litigation." 11-ER-2774.

> **D.** **The district court solicits both written and oral objections to the Consent Decree to ensure all parties, and the community, can voice concerns.**

To ensure concerns with the Consent Decree were assessed, the court permitted written objections, to be postmarked no later than December 31, 2021. 11-ER-2775. Between December 17 and January 11, objections were filed by a former inmate, Wilkins, many then-current inmates (including some of the Incarcerated Appellants), and a group of non-profit organizations (including the Non-Profit Appellants) who claimed to "represent, employ, or are formed by incarcerated and formerly incarcerated individuals, persons at significant risk of future incarceration, and organizations that serve the mental health needs of such persons and are 'aggrieved person[s]' for this case and fall within the zone of interests." *See generally* 5-ER-830–8-ER-1995.

21

Once the objections were filed, the district court permitted two days of public comment and testimony, including a day where community members could voice their concerns as well as a day for in-custody inmates to address the court. 2-ER-18–255, 3-ER-257–342. A final approval hearing was held on January 19, 2022, but the court continued the hearing to January 27, 2022, to allow for more objectors to be heard. 2-ER-18–255; 3-ER-257–342.

### E. After analyzing all written and oral objections, the district court grants approval of the Consent Decree.

After considering the Consent Decree and all objections, as well as holding the two days of hearings, the district court granted final approval of the Consent Decree on February 7, 2022. 1-ER-3–13. Preliminarily, in analyzing the Consent Decree, the district court found that the parties had "extensively evaluated the merits of the case" and that the prolonged, arm's length negotiations were not the product of fraud, overreaching, or collusion among the parties. 1-ER-4–5. Further, the district court also determined that the extensive discovery that was completed and the stage of the proceedings supported approval. 1-ER-5. Namely, the parties engaged in four years of factual

22

investigations and legal analysis. *Id*. Indeed, even before the Complaint was filed, the district court noted that class counsel spent "hundreds of hours communicating with incarcerated individuals by phone and in writing" to understand their concerns and experiences. *Id*. This intensive investigation continued after the Complaint was filed given that class counsel "reviewed over 57,000 pages of documents, attended multiple tours of the Jail over approximately eight days, and retained neutral experts to investigate and render reports on the conditions in the Jail." *Id*. Additionally, the district court determined that the Consent Decree provided substantial changes to the policies, procedures, and facilities at the Jail, which it identified in some detail, distinguishing between the benefits conferred on the Class at large, and the other benefits provided specifically to the Sub-Class. 1-ER-5–6.

The district court further determined that the pertinent objections did not dissuade the court from approval because they highlighted the need to reform the Jail's policies and procedures. 1-ER-9. Specifically, it assessed 131 responses to the Consent Decree, 110 from the Class members, thirteen from community members, and nine from various organizations. 1-ER-6–7. Additionally, the district court reviewed the

23

hearing held on January 19, 2022, where the court heard from 24 individuals, including Incarcerated Appellants' counsel and interested community members, as well as the hearing held on January 27, 2022, where 37 Class members raised their concerns to the court.  1-ER-7. After analyzing and assessing the written responses and issues raised at the hearings, the district court synthesized the objections and community responses and then specifically addressed each.  1-ER-7–9.

For example, a number of objectors raised issues not before the court such as concerns about the quality of food or laundry service which the court aptly noted was not at issue but referred to two other pending cases that dealt with those concerns.  1-ER-7.  The district court also aptly pointed out that a number of the objectors raised concerns about the lack of monetary relief for Class Members, but the Complaint only sought injunctive relief.  1-ER-8.  Other objections related to inhumane conditions at the Jail or asserted that conditions at the Jail had not improved over time.  1-ER-7–8.  The district court noted that the inhumane conditions were exactly why the Consent Decree was appropriate, acknowledging that it had not yet been implemented and so its effectiveness had yet to be seen.  *Id*.  The

24

district court also addressed objections raised by counsel for Incarcerated Appellants. *Id*. Their counsel had objected that the Consent Decree offered no benefits to most of the incarcerated individuals. 1-ER-7. The district court disagreed and was convinced that a reform would markedly improve conditions at Santa Rita Jail. 1-ER-7–9. The district court also determined that there was no basis for the claims of Incarcerated Appellants' counsel that the Consent Decree was a "sham" due to budget increases and fees award were unfounded. 1-ER-8. Further, the district court noted that the Consent Decree required new staff be assigned to Santa Rita Jail and not diverted to the Sheriff's other functions. 1-ER-9. As to Class Counsel's fee awards, the court noted that the discovery had been extensive and Class Counsel would be continuing to monitor and implement the Consent Decree so the fees were reasonable given the circumstances. *Id*.

The court then concluded that the pertinent objections were not persuasive enough to dissuade it from approving the Consent Decree and actually highlighted "the pressing need to reform the Jail's policies and procedures." 1-ER-7–9.

Despite all this, the Appellants remained dissatisfied, and this appeal followed.

## SUMMARY OF ARGUMENT

After years of litigation, investigation, and expert analysis, the parties below negotiated a fair and reasonable Consent Decree to resolve the injunctive claims asserted by Class Representatives and thereby provide all class members meaningful relief for their asserted concerns.  Appellants—some of whom are not even members of the Class—have not shown that the district court abused its discretion in approving that Consent Decree.  As a result, they have not shown reversible error, and this Court should affirm.  *See Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).

*First*, two of the appeals—Case Nos. 22-15275 & 22-15363—were filed by appellants who lack standing to object to the Consent Decree or appeal from its approval.  *See* Section I, *infra*.  Except in circumstances not present here, only parties to an action may appeal a judgment.  Fed. R. App. P. 3(c)(1)(A); *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.I*, 945 F.3d 1237, 1241 (9th Cir. 2020); *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004).  Neither

26

Wilkins nor any of the Non-Profit Appellants is or represents a party in this action.  The Court accordingly should dismiss their appeals and disregard their arguments.

*Second*, Appellants fail to demonstrate any procedural defect in the district court's approval of the Consent Decree.  *See* Section II, *infra*.  For example, they are wrong to question the adequacy of notice to the Class.  *See* Section II.A, *infra*.  The parties gave notice to all class members in the manner directed by the district court, including additional efforts the court required, after considering concerns raised by some objecting members of the Class.  Nothing more was required. Fed. R. Civ. P. 23(e)(1).  And neither authority nor logic supports Incarcerated Appellants' demand for notice to unidentified persons who may become class members in the future.

Non-Profit Appellants are also wrong to argue that approval of the Consent Decree required express confirmation of Class Representatives' standing.  *See* Section II.B, *infra*.  Class Representatives did demonstrate their standing at the time the district court certified the Class and Sub-Class.  Non-Profit Appellants do not even claim otherwise.  Nor do they identify any authority for the proposition that

27

the district court was required to revisit the issue expressly when approving the Consent Decree.

There is similarly no merit to Non-Profit Appellants' challenge to Judge Cousins's jurisdiction to approve the consent decree. This Court—like every other Circuit to consider the issue—has already rejected their argument that consent from absent class members is required to confer jurisdiction on a magistrate. *See* Section II.C, *infra*; *Koby v. ARS Nat'l Servs., Inc.,* 846 F.3d 1071, 1076 (9th Cir. 2017). There is no reason or opportunity for the Court to reconsider that rule here.

Non-Profit Appellants are also wrong when they argue that the Consent Decree is defective because the parties did not get multiple bids for a settlement administrator, under the district court's Procedural Guidance for Class Action Settlements. *See* Section II.D, *infra*. The cited guidelines are neither mandatory nor relevant to this case.

*Third*, the district court properly evaluated the Consent Decree under applicable standards, and none of Appellants' contrary

28

arguments demonstrate a reversible abuse of discretion.  *See* Section III, *infra*; *Campbell*, 951 F.3d at 1121; Fed. R. Civ. P. 23(e)(2).

It properly assessed the adequacy of Class Counsel's representation, both at the time of class certification and again when approving the Consent Decree, reflecting on both their expertise and the extensive discovery and investigation they undertook.  *See* Section III.A, *infra*.  The anecdotal reports of a few inmates regarding Class Counsel's responsiveness to their individual concerns fail to demonstrate error in that regard.

Appellants also fail to show any abuse of discretion in the district court's evaluation of the adequacy named class members' representation.  *See* Section III.B, *infra*.  The named plaintiffs were all members of the Class, and most were also members of the Sub-Class. Their interests in the purely injunctive relief sought in this case were aligned.  And the district court found from record evidence that they prosecuted the case thoroughly.  Appellants' arguments fail to show otherwise.

The district court also correctly found that the Consent Decree resulted from arms' length negotiations, supervised by a magistrate

19267489.11

judge. *See* Section III.C, *infra*. Appellants identify no cognizable defect in that ruling.

Nor have Appellants shown an abuse of discretion in the district court's substantive finding that the Consent Decree conferred meaningful relief to both the Class and Sub-Class. *See* Section III.D, *infra*. The detailed analysis provided by independent experts, the supervision of a magistrate judge, and the involvement of the DOJ all support the district court's conclusions.

Appellants' contrary arguments rest on either relitigating the evidence presented in support of the Consent Decree or highlighting evidence they believe should have led the district court to a different conclusion. *See* Section III.D.1, *infra*. None of these arguments demonstrate clear error, however.

Appellants' demand for more or different relief similarly fails to demonstrate a reversible abuse of discretion. *See* Section III.D.2, *infra*. Their arguments in this regard fail to reflect what was possible for the Class and Sub-Class to achieve through negotiation in *this* litigation.

Nor was there any evidence of collusion between the County and Class Counsel, or of any self-interest driving negotiations, as the

19267489.11

district court correctly ruled. *See* Section III.D.3, *infra*. Unlike cases where this Court has found collusion, the terms of the Consent Decree provided meaningful injunctive relief to all class members. No special relief was granted to named plaintiffs. And class counsel received fees that reflected their actual work.

Appellants also fail to show any lack of equity between the benefits received by the Class and Sub-Class respectively. *See* Section III.E, *infra*. The district court properly considered and identified the substantial, injunctive relief afforded both groups. Appellants may disagree with the balance struck, but their arguments fail to show clear error.

Finally, contrary to Appellants' arguments, the district court did provide a reasoned response to all non-frivolous objections. *See* Section III.F, *infra*. The district court went to great lengths to ensure that all class members had an opportunity to be heard on their objections, and it undisputedly considered those objections and responded in a thematic fashion. Appellants identify no authority for their argument that the court was required to respond individually to each objector, rather than reasonably group objections and respond collectively.

19267489.11

# STANDARD OF REVIEW

This Court reviews approval of class settlements and consent decrees for abuse of discretion. *Briseño v. Henderson*, 998 F.3d 1014, 1022 (9th Cir. 2021); *Staton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003). It is an "extremely limited" review. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020). Reversal is thus appropriate "only upon a strong showing" that the district court abused its decision, *Staton*, 327 F.3d at 960 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)), and generally only where there are "convincing indications" that the settlement was motivated by self-interest, rather than the interests of the class. *Briseño*, 998 F.3d at 1022; *Staton*, 327 F.3d at 960.

A district court abuses its discretion when it fails to apply the correct legal standard or by making "clearly erroneous factual determinations." *Campbell*, 951 F.3d at 1121. However, a district court's determination of fairness is held to a "higher *procedural* standard," requiring exploration of all factors prescribed by Rule 23(e) and a reasoned response to all non-frivolous objections. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2021); *see also*

19267489.11

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir.

1982).

## ARGUMENT

## I.   Mr. Wilkins and the Non-Profit Appellants each lack standing to challenge the parties' settlement, and their appeals should be dismissed.

The Court need not reach arguments raised by objector-appellant

Keenan Wilkins and the Non-Profit Appellants.  These appellants are

neither members of the Class nor bound by the challenged settlement,

and they have no standing on appeal as a result.[2]

Only parties to a lawsuit or those that properly become parties,

may appeal a judgment.  Fed. R. App. P. 3(c)(1)(A); *see also Marino v.*

*Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) (citing *United States ex rel.*

*Louisiana v. Boarman*, 244 U.S. 397, 402 (1917)).  Though distinct from

the requirements of constitutional standing, this rule reinforces the

rationale in standing, given that "it is usually only *parties* who are

sufficiently aggrieved by a district court's decision that [] possess Article

---

[2] The County moved to dismiss the appeals of Wilkins and the Non-Profit Appellants on this basis on June 13, 2022.  (22-15275 Dkt. 20; 22-15363 Dkt. 37.)  After opposition and reply, the Court denied the County's motions without prejudice.  (15275 Dkt. 33; 22-15363 Dkt. 37.)

III and prudential standing to be able to pursue an appeal of it." *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.*, 945 F.3d 1237, 1241 (9th Cir. 2020) (quoting *Raley v. Hyundai Motor Co., Ltd.*, 642 F.3d 1271, 1274 (10th Cir. 2011)); *see also United States v. Kovall*, 857 F.3d 1060, 1068–69 (9th Cir. 2017). This Court will only deviate from this rule and permit a non-party's appeal in "exceptional circumstances." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 804 (9th Cir. 2002). Neither the Non-Profit Appellants nor Wilkins meet this standard.

Non-Profit Appellants are not named plaintiffs. Nor are they members of the certified Class; they are not—nor could they be— incarcerated in Santa Rita Jail or likely to be so in the future. They have never claimed to represent any individual who is or likely will be incarcerated at Santa Rita Jail. See 15363 Dkt. 35. Their only asserted interest in this case is their general advocacy on behalf of persons who are, have been, or are likely to be incarcerated. See 6-ER-1231. Accordingly, they are neither members of the Class nor counsel for class members.

34

Wilkins likewise is not a named plaintiff and, as he candidly acknowledges, has not been incarcerated at Santa Rita Jail since 2013. Wilkins AOB 5. He is almost certainly never going to be incarcerated in Santa Rita Jail in the future, as he is serving multiple life sentences in state prison. 22-15275 Dkt. 21-2. As a result, he is not a member of the certified class.

Nor do "exceptional circumstances" justify the participation of the Non-Profit Appellants or Wilkins. Such circumstances arise only when: "(1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004); *see also United States v. Badger*, 930 F.2d 754, 756 (9th Cir. 1991). However, participation in district court proceedings must be meaningful. *Volkhoff*, 945 F.3d at 1242; *see also Washoe Tribe of Nevada v. Greenley*, 674 F.2d 816, 818–19 (9th Cir. 1982) (concluding that the non-party state could not appeal where it decided not to intervene in the district-court proceedings in order to avoid waiving immunity). Further, the equities will generally support a non-party's appeal only when a party has haled the non-party into the proceeding

35

against their will and then attempted to thwart the non-party's right to appeal by arguing that they lack standing when judgment has been entered against them. *Hilao*, 393 F.3d at 992.

Here, as in *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438, 1441 (9th Cir. 1987) and *Volkhoff,* 945 F.3d at 1242, both the Non-Profit Appellants and Wilkins were well apprised of and even briefly appeared in the proceedings below, yet chose never to seek intervention. And, because none of them were members of the Class, they lacked standing to participate in even the limited way they did. *See San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) (finding non-class members lacked standing to object to proposed settlement); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1071 (N.D. Cal. 2017*)* (rejecting non-party's objection to proposed settlement).

Moreover, neither the Non-Profit Appellants nor Wilkins were "haled" into court against their will. As a result, the equities do not favor their participation in the appeal, under the relevant standards articulated by this Court. *See Hilao*, 393 F.3d at 992; *R&W Tech.*

19267489.11

*Servs., Ltd. v. Commodity Futures Trading Comm'n*, 205 F.3d 1365, 1114 n.1 (5th Cir. 2000).

The Court should dismiss the Non-Profit Appellants and Wilkins appeals and should decline to consider their objections to a consent decree to which they are not parties.

## II.  Appellants' various procedural objections lack merit.

### A.  Notice to the class was adequate, and Inmate Appellants' demand for notice to unidentified persons who might become class members in the future is unreasonable and impracticable.

Under Rule 23(e), a class action cannot be settled without the court's approval, following notice of the proposed compromise to all class members "in such manner as the court directs." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 593 (1997), emphasis added; Fed. R. Civ. P. 23(e)(1).  Such notice was given here.  *See* 1-ER-10.  Class Counsel undertook significant effort to ensure that notice of the proposed settlement was provided to all class members, and the district court oversaw the process, directing additional efforts in response to concerns raised by objectors.  *See* 4-ER-561–68, 591–94, 623–28; 12-ER-2832–33.

37

Incarcerated Appellants argue all this was inadequate because it did not provide notice to future members of the class, that is, unidentified persons who become incarcerated at Santa Rita Jail in the future.  IOB 3–4, 20, 22–24.  The district court rightly rejected this argument.  1-ER-13.

There is no authority for the proposition that notice of a class settlement providing exclusively injunctive relief must be given to as-yet-unknown individuals who may one day become class members.  The cases Incarcerated Appellants cite state no such rule.  *See* IOB 21-22, 35.  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985), *Hansberry v. Lee*, 311 U.S. 32, 42–45 (1940), and *Frank v. United Airlines, Inc.*, 216 F.3d 845, 852–53 (9th Cir. 2000) merely discuss the due-process limitations of class representation and the need for adequate representation by named class members at all stages of litigation.  *Hanlon*, 150 F.3d at 1026, reflects the courts' obligation to guard absent class members in order to protect their right to due process, and it approved the sufficiency of the notice provided absent

19267489.11

class members in that case, despite the objections of some.[3]  Inmate Appellants' demand for notice to future class members is accordingly not supported by any rule or precedent.

Nor should the Court adopt such a rule.  Inmate Appellants articulate no basis upon which the parties could have meaningfully identified people who will one day become members of the Class, in order to provide them notice.  Such a requirement would be inherently impracticable.

Instead, the district court rightly recognized that individuals do not become class members until they are actually incarcerated at Santa Rita Jail.  1-ER-10; *accord A. B. v. Hawaii State Department of Education*, 30 F.4th 828, 838 (9th Cir. 2022) ( "The inclusion of future class members in a class is not itself unusual or objectionable, because when the future persons referenced become members of the class, their claims will necessarily be ripe.") (internal quotations omitted).  Inmate Appellants argue that this was error, but again, they provide no

---

[3] As discussed in more detail Section III, *infra, Hanlon* has been partially overruled on other grounds.  *See, e.g., Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1046 (9th Cir. 2019).  It remains a relevant summary of the standards at issue in this case.

19267489.11

contrary authority, nor do they explain *how* future class members should be identified or given notice. IOB 23. The contrary rule advocated by Inmate Objectors would, as a practical matter, preclude class settlements, like the settlement here, that ensure equitable benefits for future class members. That, in turn, will render class treatment for incarcerated persons effectively impossible; injunctive relief for the benefit of inmates will be all but entirely unavailable due to the transitory nature of incarceration in county jails. This Court should not adopt such a legally baseless and counter-productive notice requirement.

**B.     Contrary to the arguments of the Non-Profit Appellants—which themselves represent no member of the class—the named plaintiffs had standing.**

As discussed in Section I, *supra*, the Non-Profit Appellants are neither parties to this case nor representatives for any named party or absent class member. Yet they critique the district court's approval of the Consent Decree for its failure to confirm the Class Representatives' standing expressly. NPOB 7, 29–30 (citing *Frank v. Gaos*, 586 U.S. __(2019), slip op at 5 (per curiam); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 340 (2006); *Friends of the Earth, Inc. v. Laidlaw*

40

*Environmental Services (TOC), Inc.*, 528 U.S. 167, 180 (2000); *TransUnion LLC. V. Ramirez*, 141 S. Ct. 2190 (2021)). They are careful to acknowledge that Class Representatives *may have* standing, but simply argue that they failed to demonstrate it. NPOB 32-34 (citing 12-ER-3039).

Their argument is meritless. Class Representatives demonstrated their standing as both a matter of law and fact when seeking class certification. *See*, *e.g.*, 12-ER-3043–50; 17-ER-4261–62. Non-Profit Appellants offer no argument for their implicit contention that the law cited is inapt or that the facts fail to meet legal standards. Nor do they cite any legal authority for the proposition that the absence of an express discussion of standing in the district court's orders—especially when no one ever appears to have doubted Class Representatives' standing—constitutes an abuse of discretion.

### C. Non-Profit Appellants' challenge to Judge Cousins is also meritless and contradicted by published precedent in both this Court and other circuits.

Non-Profit Appellants also attack the Consent Decree on the asserted ground that Judge Cousins had no jurisdiction to approve it. Their argument is inconsistent with this Court's binding precedent.

41

28 U.S.C. § 636 and Fed. R. Civ. P. 73 provide that parties in federal court proceedings must consent to the jurisdiction of a federal magistrate judge. There is no question that Class Representatives and the County—all the named parties in this case—consented to have Judge Cousins preside. 19-ER-4639, 4640. Nonetheless, Non-Profit Appellants—again, despite the fact that they are themselves not parties and not bound by the Consent Decree—argue that the consent of absent class members was also required. But this Court has already decided otherwise.

In *Koby v. ARS National Services, Inc.*, this Court considered whether unnamed class members may object to the jurisdiction of a magistrate who approved a class action settlement. 846 F.3d 1071, 1076 (9th Cir. 2017). In its analysis, the Court distinguished the rights of named and unnamed class members under Rule 73. *Id.* at 1076. The Court concluded that the language and legislative history of the statute underlying Rule 73 made it "clear that Congress did not intend absent class members to be treated as parties in this context." *Id.* Accordingly, "consent of the named plaintiffs alone" is sufficient to consent to magistrate judge jurisdiction, and unnamed class members may not

appeal on this basis. *Id.* That decision is binding on this Court until its

holding is reversed *en banc* or disapproved by the Supreme Court.

*Sackett v. U.S. Env't Prot. Agency*, 8 F.4th 1075, 1089 (9th Cir. 2021).

Advocating a contrary rule, Non-Profit Appellants cite Justice

Thomas's dissent in *Roell v. Withrow*, 538 U.S. 580, 599 (2003). NPOB

22. The citation is unhelpful. Even beyond the fact that it is a dissent,

the case does not consider whether named class representatives may

consent to the jurisdiction of a magistrate; the *Roell* case was not a class

action. Rather, the case *holds* that consent to a magistrate may be

inferred from a party's conduct during litigation, including by appearing

before the magistrate without objection. *Id.* at 586–87. Here, not only

the parties but also Appellants appeared before Judge Cousins without

objection. Under these circumstances, *Roell* supports the Consent

Decree, not the arguments of Non-Profit Appellants.

Indeed, as even Non-Profit Appellants acknowledge, an objection

to the jurisdiction of a magistrate "is personal to *the parties*" and "may

be waived." NPOB 20 (citing *Pacemaker Diagnostic Clinic of America,*

*Inc. v. Instromedix, Inc.*, 725 F.2d 537 , 542 (9th Cir. 1984) (emphasis

added). They are accordingly wrong when they argue, based on the

43

dissent in *Roell*, that objections to a magistrate judge's jurisdiction can be raised for the first time on appeal. NPOB 28 (citing *Roell*, 538 U.S. at 592).

Non-Profit Appellants also cite extensively to historical texts and treatises for their argument that the consent of all absent class members is required before a magistrate can preside over class proceedings. NPOB 13–24 (citing Federalist no. 78, The Federalist Papers, ed. C. Rossiter (1961); J. Anthony Downs, *The Boundaries of Article III: Delegation of Final Decisionmaking Authority to Magistrates*, 52 U. Chi. L. R. 1032, 1032–33 (1985); W.N. Hohfeld, *Some Fundamental Legal Conceptions as Applied in Judicial Reasoning*, 23 Yale L.J. 16, 28–54 (1913); Cornelius van Bynkershoek, II Quaestionum Juris Publici (1737), trans. Tenney Frank, Oxford: Clarendon Press, 1930, ch. XII). Their discussion of the importance of Article III judges and the benefits of lifetime tenure, however, provide no basis for this Court to break with the settled precedent of *Koby*. *See Sackett*, 8 F.4th at 1089. That is especially true in light of the fact that every other circuit to consider the issue appears to have adopted the same rule, requiring only the consent of named parties, not absent class members.

*McAdams v. Robinson*, 26 F.4th 149, 155 (4th Cir. 2022); *see also id.* at 157; *Day v. Persels & Assocs., LLC*, 729 F.3d 1309, 1316–17 (11th Cir. 2013) (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 181 (3d Cir.2012); *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir.1998).

Alternatively, Non-Profit Appellants suggest that, even assuming *Koby* is good law, it should not apply here, either because of an asserted conflict of interest among class members, NPOB 24-25, or because the settlement terms were inadequate, NPOB 26–27. But, as discussed in more detail below, the district court found based on substantial evidence in this case there was no conflict of interest and that the settlement provided good value to the entire Class and Sub-Class. 1-ER-9; 16-ER-3805–4041; 17-ER-4275-76. The rule Non-Profit Appellants advocate thus has no application to this case, and the Court has no reason to consider or adopt it.

### D. The Non-Profit Appellants also fail to demonstrate reversible error from the absence of a settlement administrator.

Finally, Non-Profit Appellants argue that the Consent Decree should be set aside because the parties did not get multiple bids for a

settlement administrator, as recommended by the district court's Procedural Guidance for Class Action Settlements. NPOB 7, 11, 67. This argument fails for two reasons.

First, nothing in the district court's "guidance" is mandatory or binding on the district court, either by text or apparent intent. *See* Procedural Guidance for Class Action Settlements (Nov. 29, 2022) ("Parties submitting class action settlements for preliminary and final approval in the Northern District of California should review and follow these guidelines to the extent they do not conflict with a specific judicial order in an individual case."). Non-Profit Appellants have not cited any authority for the proposition that a district court abuses its discretion when approving a class settlement differing from these guidelines, nor does any appear from research.

Second, there is no settlement administrator in this case, as the Consent Decree—consistent with the operative complaint—requires no "claims payment[s]." *See* Procedural Guidance for Class Action Settlements (Nov. 29, 2022), ¶ (2)(a). Non-Profit Appellants assert that the settlement-administrator requirements apply even when there is no claim for money damages, but they offer no basis for the argument.

46

NPOB 68.  And it does not appear that any objector raised a concern over the need for a settlement administrator in the district court.  Non-Profit Appellants' argument in this regard is entirely misplaced.

## III.  Judge Cousins correctly approved the consent decree, and none of the Appellants have shown an abuse of discretion.

Turning to the substantive merits of the Consent Decree, this Court considers the following eight factors when considering whether a district court abused its discretion in approving a settlement: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026.  The same test applies to consent decrees.  *See Staton*, 327 F.3d at 959.

Although the Federal Rules of Civil Procedure were amended in 2018 to require that district courts consider certain, enumerated factors when evaluating a proposed class settlement, the amended rules are

47

consistent with and did not displace the so-called *Hanlon* factors. *See Campbell*, 951 F3.d at 1120–21, n.10. Thus, Appellants are wrong when they assert that those standards should be disregarded or that the district court erred in discussing them. *See* NPOB 35–36, 40 (discussing 1-ER-4); IOB 16, 26 (citing *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 606 (9th Cir. 2021); *Allen v. Bedolla*, 787 F.3d 1218, 1223–24 (9th Cir. 2015)); Robertson OB 1, 11-12. In fact, one of the cases Incarcerated Appellants cite discusses and applies *Hanlon*. *See McKinney-Drobnis*, 16 F.4th at 610.

Non-Profit Appellants are correct when they note that, unlike Rule 23, the *Hanlon* factors were viewed as permissive and non-exhaustive. NPOB 36, fn. 10 (citing *Officers for Justice*, 688 F.2d at 625). However, even after the amendment to Rule 23, it remains that this Court focuses on the "overall adequacy of the district court's fairness determination, not with parliamentary points of order about its process" and so will not overturn a beneficial settlement for technical defects in the approval process. *In re Volkswagen*, 895 F.3d at 613; *see also Campbell*, 951 F.3d at 1127 (disregarding harmless error in district court's discussion and holding that no one factor "is dispositive."); *In re*

48

*Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 569 (9th Cir. 2019) (holding settlement fairness is evaluated as a whole, not by individual component parts). And nothing in amended Rule 23(e) mandates that district court orders walk pedantically through each sub-division to evaluate the sufficiency of a class settlement. *See Campbell*, 951 F.3d at 1121 & n.10.

Non-Profit Appellants cite *In re Apple Inc.*, 50 F.4th at 769 for the contrary proposition that the mere citation to the wrong legal standard constitutes reversible error, even if the substance of the district court's ruling was appropriate. NPOB 40. But *In re Apple Inc.* merely holds that *application* of the wrong legal standard is a reversible abuse of discretion. 50 F.4th at 782–83. While the opinion uses the word "cited," its analysis focuses on the district court's use of an improper presumption favoring settlement approval. *Id.* This Court's precedent cannot and should not be understood to require reversal for non-substantive or hyper-technical issues in a district court's order. *Accord Saucillo v. Peck*, 25 F.4th 1118, 1133 (9th Cir. 2022); *In re Volkswagen*, 895 F.3d at 613. Remanding settlement approvals on such grounds, where the record demonstrates that the settlement is fair and beneficial

49

and so approval is all but inevitable, would needlessly waste the resources of both parties and the courts.

Consistent with these standards, the district court ensured a fulsome opportunity for all class members to express their views, carefully evaluated the Consent Decree and supporting evidence, and determined that the settlement was fair, reasonable, and adequate. 1-ER-6–12. Despite all this, Appellants argue that the court's order failed to consider various factors with sufficient care. They are wrong.

## A. The district court properly assessed whether Class Counsel adequately represented the Class.

As Appellants each note, one of the factors for the district court to consider when evaluating the Consent Decree was the adequacy of class counsel's representation. Fed. R. Civ. P. 23(e)(2)(A); IOB 1, 6, 8–9, 10, 16, 36; Robertson OB 3–6; NPOB 43–44 (citing *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *10 (N.D. Cal. Mar. 18, 2020)); Wilkins OB 2–4, 7–11. The Non-Profit Appellants note that class counsel's adequacy should be considered in light of the (1) amount of adversarial litigation before the settlement; (2) nature and amount of discovery before the settlement;

(3) conduct of negotiations, including use of a mediator; and (4) the award of fees. NPOB 42–43 (citing *Lusk v. Five Guys Enterprises LLC*, No. 1:17-cv-00762-AWI-EPG, 2019 WL 7048791, at *4 (E.D. Cal. Dec. 23, 2019); *Hanlon*, 150 F.3d at 1026; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Richardson v. L'Oreal USA, Inc.*, 951 F. Supp. 2d 104, 107 (D.D.C. 2013)).

Here, the district court did consider the adequacy of class counsel, both in the context of approving the Consent Decree and, before that, when certifying the class. 1-ER-9; 17-ER-4237–39, 4272–4313. In particular, the court reflected on counsel's experience and their thorough, four-year investigation, including hundreds of hours of communications with incarcerated persons, extensive document review, jail tours, retention of independent experts, and many settlement conferences before Magistrate Judge Laurel Beeler. 1-ER-7–8, 12–13. This analysis was both thorough, supported by evidence, and consistent with the legal standard articulated by the Non-Profit Appellants. *See*, *e.g.*, 4-ER-548–628; 17-ER-4272–4313.

Despite that, Appellants attempt to show that the district court abused its discretion in various ways. For example, Incarcerated

51

Appellants note that one inmate, Brandon Jones, expressed concerns about the law firm representing the class. IOB 8–9 (citing 18-ER-4450–4459. Of course, this is only one piece of evidence regarding Class Counsel's adequacy, not conclusive proof that Class Counsel was inadequate. And, perhaps more importantly, Incarcerated Appellants acknowledge that Judge Cousins ordered a response from Class Counsel, which they timely provided, stating under oath that Mr. Jones' concerns were addressed to his satisfaction and that he remained Class Counsel's client. 18-ER-4460, 4447–49. Incarcerated Appellants state no basis for finding an abuse of discretion on this record.

In a similar vein, Robertson argues that Class Counsel has failed to assist him adequately with his own allegations of post-settlement abuse. Robertson OB 3–6, 28–30 (citing *Sanders v. City of Fresno*, 551 F. Supp. 2d 1149 (E.D. Cal. 2008) for the proposition that use of a taser can cause loss of life). With due respect for Mr. Robertson's concerns, his arguments are misplaced. First, his allegations reflect concerns arising after the district court approved the Consent Decree, and they reflect only his own, individual experience. Balanced against the affirmative evidence of Class Counsel's adequacy, these assertions

19267489.11

cannot demonstrate an abuse of discretion by the district court in considering whether Class Counsel adequately represented the Class in pursuing a fair settlement. *See*, *e.g.*, *Beech Aircraft Corp. v. U.S.*, 51 F.3d 834, 838 (9th Cir. 1995) (holding this Court should not set aside district court findings based on conflicting testimony); *Wittmayer v. U.S.*, 118 F.2d 808, 811 (9th Cir. 1941) (holding district court's factual findings based on conflicting evidence a presumptively correct). Second, his arguments are not supported by record evidence. The Court should disregard them accordingly. *See* Circuit Rule 28-2.8; see *Han v. Stanford Univ.*, 210 F.3d 1038, 1040 (9th Cir. 2000).

Wilkins likewise raises concerns about Class Counsel's handling of certain other cases. Wilkins OB 7-11 (discussing *Brown v. Ahern*, Case No. C08-1084-MMC; *Coleman v. Newsom*, Case No. 2-90-cv-0520 KJM DB; *Armstrong v. Newsom*, Case No. 4-94-cv-2307). Here too, however, Wilkins' opinions regarding the adequacy of Class Counsel's work in those prior cases, see 8-ER-1991–92, are not sufficient to demonstrate error by the district court. *See*, *e.g.*, *Beech Aircraft Corp.*, 51 F.3d at 838; *Wittmayer*, 118 F.2d at 811.

19267489.11

For their part, the Non-Profit Appellants acknowledge Class Counsel's qualifications, but object that they should have worked more actively with the various objectors. NPOB 43–44 (citing *Vargas v. Ford Motor Co.*, No. CV-12-08388 AB (FFMx), 2020 WL 1164066, at *8 (C.D. Cal. Mar. 5, 2020)). Non-Profit Appellants overstate the cited decision. While it reflects favorably on class counsel's work to satisfy the concerns of objectors, it does not purport to set such objector satisfaction as the *sine qua non* of adequate representation. In addition, Non-Profit Appellants' arguments are inconsistent with the record below. In evaluating whether to approve the Consent Decree, the district court directed Class Counsel to explain their response to various concerns raised by objectors. 3-ER-540–42. And, in response, Class Counsel explained in some detail their efforts to work with objectors. 3-ER-435–93. Nothing in the law requires more, and Non-Profit Appellants have not identified any abuse of discretion here.

Non-Profit Appellants also assert that Class Counsel's inadequacy is reflected in the absence of adversarial litigation and discovery. NPOB 44–45 (quoting *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 977 (E.D. Cal. 2012); Judicial Conf. Advisory Cmte. on Rules,

Notes to 2018 Amendments). They cite no evidence for this argument, but it appears to rest on the agreement between the Certified Class and the County to retain experts, certify the class, grant fees to Class Counsel, and approve the Consent Decree. These are merely the ultimate resolution of various procedural issues, however. As the district court found, each step was preceded by years of extensive investigation, discovery, and magistrate-supervised negotiations. 1-ER-9; *see also* 4-ER-592–94, 621–28 (describing Class Counsel's investigation and discovery). Indeed, Non-Profit Appellants acknowledge the district court's consideration of these facts. NPOB 45. Their bare assertion that some greater level of specificity was required is insufficient to demonstrate an abuse of discretion on this record.

**B.    Appellants have not shown reversible error in the district court's determination that the named class members adequately represented the class.**

Consistent with *Hanlon* and Rule 23(e), the district court also considered the adequacy of the Class Representatives to represent both the Class and Sub-Class. *See* 17-ER-4238 (finding that the class met all requirements of Rule 23(a), including adequacy of representation). The record supported that conclusion. 17-ER-4263–64 (discussing the

55

alignment of interests between the named plaintiffs and all class and sub-class members based on their shared experience of the challenged conditions at Santa Rita Jail); 12-ER-2830 (same).

Nonetheless, Appellants challenge the adequacy of the named plaintiffs' representation. None of their arguments, however, meet the legal standard for demonstrating an abuse of discretion. *See* IOB 27–28; *compare also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (finding named plaintiffs adequately represented class when they share interests and have no antagonism with the other members), *with Hesse v. Sprint Corp.*, 598 F.3d 581, 588–89 (9th Cir. 2010) (finding inadequate representation when named plaintiffs fail to vigorously prosecute claims or have a conflict of interest).

As a threshold matter, Incarcerated Appellants and Robertson assert that the district court failed to consider the issue at all. *See* Robertson OB 13; IOB 1, 17. As noted, however, the district court *did* consider the adequacy of the named plaintiffs as class representatives in connection with certifying the class. 17-ER-4238. Appellants cite no authority for the suggestion that it was an abuse of discretion for the district court to omit making this finding *again* when approving the

settlement, when there was no basis for revisiting that determination. Moreover, though attributed to Class Counsel, rather than named plaintiffs, the district court *did* find that the claims had been vigorously prosecuted, consistent with the standards for finding adequate class representation. *Compare* 1-ER-4–6, *with Hesse*, 598 F.3d at 588–89.

Attempting to show otherwise, Incarcerated Appellants and Non-Profit Appellants emphasize that all but one named plaintiff were members of the Sub-Class. IOB 4–6, 26–30; NPOB 24–25. From this, they extrapolate that the named plaintiffs were not as aligned with the wider class as they might have been, noting that the common questions justifying class treatment and the relief granted by the Consent Decree focused on the concerns of the sub-class. IOB 11–13, 40. But their arguments fail to suggest either a conflict of interest or failure to litigate the case actively.

First, contrary to Appellants' characterization, *all* plaintiffs were members of the general class; they were adults incarcerated at Santa Rita Jail. 17-ER-4238, 4263–64. And even Incarcerated Appellants acknowledge that one of the named plaintiffs was *exclusively* a member of the general class. IOB 6. The fact that seven of the eight named

19267489.11

plaintiffs were *also* members of the sub-class does not establish a conflict of interest.

Second, as discussed in greater detail below, the district court made clear, evidence-based findings regarding the adequacy and intra-class equity of relief secured to both the class and sub-class. *See* Section III.E, *infra*. The results of the case thus belie any suggestion that the named plaintiffs had a conflict of interest with the other members of the class.

Alternatively, Incarcerated Appellants also note that the Class includes some 120,000 hypothetical individuals and, they say, the district court did not consider that fact when evaluating adequacy of representation. IOB 27 (citing ER 4180). But they offer no explanation of how that should have impacted the analysis, cite no case law to show its relevance, or otherwise explain how this shows an abuse of discretion. Instead, Incarcerated Appellants suggest that the members of the Sub-Class were only working for their own interests, not for the interests of the wider Class. IOB 30–31. Their arguments are not based in evidence and, again, are belied by the fact determined by the

58

district court that the named plaintiffs secured valuable relief for all class members.

Contrary to the arguments of Incarcerated Appellants, IOB 31, this is not a case like *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997). In that case, plaintiffs proposed to certify a nationwide, damages-seeking class of all persons exposed to asbestos products for exclusive purposes of settlement, whereas in this case the class was certified for purposes of litigation on purely injunctive claims and only later settled, following extensive negotiation. *Compare id.* at 597, *with* 1-ER-4; 17-ER-4237–39. Moreover, the nationwide class in *Amchem* included all asbestos-exposed persons and their families notwithstanding the wide variety of products, circumstances, producers, and suppliers to which the plaintiffs were exposed. *Amchem*, 521 U.S. at 605, 609–10. In contrast, as the district court found, the members of the Class in this case all confronted by the same circumstances, incarceration at Santa Rita Jail under circumstances alleged to have violated constitutional standards. 1-ER-4; 17-ER-4237–39. *Amchem* is no help to Appellants here.

Incarcerated Appellants also say that four of the Class

Representatives were no longer incarcerated at the time of the motion

for class certification. IOB 30. While that is true, those plaintiffs

remained class members as they had, at the time of the Consent

Decree's approval, evidence-based expectations of being incarcerated at

Santa Rita Jail again in the future. 12-ER-3043–51. There is no

ground for finding Class Representatives to be inadequate.


### C.     The district court rightly found that the Consent Decree resulted from arms' length negotiations, supervised by a magistrate judge, with the approval of the DOJ.

As Appellants note, one of the factors district courts consider in

evaluating a settlement's fairness is whether it resulted from arm's-

length negotiations. *Briseño*, 998 F.3d at 1030 (discussing Rule

23(e)(2)(B). And the district court did so in this case, finding based on

record evidence that the Consent Decree was negotiated at arm's

length, following extensive investigations and discovery, and with the

independent involvement of Judge Beeler and the DOJ. 1-ER-4–5; *see*

*also* 4-ER-568–76, 621–22; 12-ER-2823, 2837; 16-ER-3805–4041. There

was no abuse of discretion here.

19267489.11

Nonetheless, Robertson and the Non-Profit Appellants argue that the district court failed to explain its conclusion that the negotiations were arm's length. Robertson OB 15; NPOB 46. With respect, that is simply not true. Again, the district court identified the extensive litigation that preceded negotiations and the involvement of Judge Beeler and the DOJ to show the arm's length nature of the negotiations. Nothing more was required.

For their part, the Non-Profit Appellants complain that the district court's order *preliminarily* approving the Consent Decree improperly found the negotiations *were* arm's length, rather than determining that such a finding was *likely*. NPOB 48 (citing 11-ER-2774; *Westfall v. Ball Metal Beverage Container Corp.*, No. 2:16-02632-KJM-CKD, 2021 WL 4206851 (E.D. Cal. Sep. 16, 2021), *3). This argument is misguided. First, it is not clear how it relates to the propriety of the district court's actual and final approval of the Consent Decree, which is the subject of this appeal. Second, there is no reason to find under Rule 23 or the cited case that a preliminary determination of arm's length negotiations is defective because it speaks in affirmative,

61

rather than predictive terms. The Court should reject the Non-Profit

Appellants' formalistic argument.

### D. Appellants have not shown any abuse of discretion in the district court's determination that the relief afforded class members was adequate and equitable.

District courts should also consider the adequacy of relief provided

by a class settlement. Fed. R. Civ. P. 23(e)(2)(C); *Hanlon*, 150 F.3d at

1026. The district court did so in this case, reflecting detailed analysis

provided by Class Counsel and independent experts, as well as the

imprimatur of Judge Beeler and the DOJ. 1-ER-4–6; 4-ER-568–76,

621–22; 16-ER-3805–4041. This is consistent with the standards in

Appellants' own arguments and more than sufficient to withstand

appellate scrutiny. *See* NPOB 49 (describing the factors courts consider

when evaluating the adequacy of a settlement); *Campbell*, 951 F.3d at

1121; *see also Briseño*, 998 F.3d at 1028 (holding a class does not need

much for a settlement to be considered fair, especially when the class

gives up little in return).

Appellants argue that the district court abused its discretion in

various ways. But their arguments reflect a mere disagreement with

the district court's conclusions and their belief that something more was

required, more evidence, more relief, or both. Nothing in their briefs demonstrates an abuse of discretion in the district court's conclusion that the Consent Decree reflected a fair and reasonable settlement of disputed claims for purely injunctive relief.

### 1. Evidence supported the district court's findings regarding the benefits the Consent Decree conferred on the Class and Sub-class.

As noted, the district court concluded based on the evidence that the Consent Decree provides substantial and equitable relief to members of both the Class and the Sub-Class, separately analyzing the benefits to each group. 1-ER-5–6. Appellants, however, all contend that the district court's analysis was insufficiently detailed or was not supported by adequate evidence. IOB 1–2, 17; Robertson OB 1, 16; NPOB 7, 12; Wilkins OB 4. In the face of the actual briefing and evidence, these general objections fall far from demonstrating clear error in the district court's factual determinations. *Campbell*, 951 F.3d at 1121.

For example, Appellants argue that the district court's reliance on the Joint Experts was misplaced and inadequate. IOB 35; NPOB 65-66 (citing 16-ER-3805–4041). In this way, Appellants are relitigating their

63

disputes with the experts, not demonstrating clear error, especially in the face of more than 200 pages of analysis.

Appellants fare no better when they argue that the district court should have given less credence to the evidence favoring settlement and more credence to objectors.  For example, Non-Profit Appellants argue that the district court erred by accepting the representations of the parties, experts, and magistrate, rather than the "hard-fought opinions" of the objectors, the number of which Non-Profit Appellants describe as "overwhelming."  NPOB 61–62; *see also* IOB 13 (emphasizing the number of objectors).  But, as noted, the existence of a conflict in the evidence does not demonstrate clear error.  *Beech Aircraft Corp.*, 51 F.3d at 838; *Wittmayer*, 118 F.2d at 811.  Moreover, with due respect to each individual objector, several of whom were not members of the Class, the 192 objectors hardly represent an "overwhelming" number, in the face of the roughly 22,000 class members incarcerated in Santa Rita Jail each year.  *See* IOB 27 (citing ER 4180).

In a related argument, Non-Profit Appellants argue that Judge Cousins should have toured Santa Rita Jail personally and unannounced.  NPOB 65 (citing 2-ER-86, 227).  But they fail to explain

64

how such a tour would have impacted or changed his decision and so fail to demonstrate abuse of discretion. Judge Cousins already accepted and agreed with the representations of both Class Representatives and objectors that conditions at Santa Rita Jail were "inhumane" and "unconstitutional." 1-ER-5–7. The district court approved the Consent Decree in order to *address* those conditions—the conditions as they existed before the Consent Decree being the only conditions Judge Cousins could have observed on a pre-approval tour. *Id*.

### 2. The district court did not abuse its discretion in finding that the Consent Decree provided meaningful relief to the Class and Sub-Class.

Appellants also raise substantive objections to the sufficiency of the relief itself. In this context, it bears emphasizing that, consistent with the overall standards of review discussed above, "[w]hen the issue presented is the substantive fairness of the settlement, [this Court] must refrain from 'substitut[ing] [its] notions of fairness for those of the district judge.'" *Campbell*, 951 F.3d at 1121 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 950 (9th Cir. 2011)).

Appellants' arguments fall squarely into this prohibition; they reflect Appellants' preferences for more or different relief, entirely

65

untethered from what was possible in the context of a negotiated resolution of the case *Class Representatives* pleaded. They fail to identify any circumstances like those present in the rare cases in which this Court has overturned a district court's finding of substantive fairness in a settlement. This is not a case where injunctive relief granted in settlement was objectively valueless, where a defendant agreed only to do things it was already doing. *See, e.g., Roes, 1-2*, 944 F.3d at 1055. Appellants' arguments thus do not demonstrate a reversible abuse of discretion. *See, e.g., Campbell*, 951 F.3d at 1123 & n.13 (rejecting objector's argument that settlement had no value and upholding district court ruling, despite this Court's view that the relief was not "particularly substantial" and that this Court might not have approved the settlement if reviewing it independently).

For the same reason, there is no merit to Incarcerated Objectors' argument that the Inmate Advisory Council is not provided sufficient powers. IOB 42 (citing ER 2929). This is a general demand for more relief, not an argument demonstrating that the relief provided was inadequate as a matter of law.

19267489.11

Non-Profit Appellants similarly contend that the Consent Decree's plan for addressing use-of-force concerns is too vague and discretionary, arguing that it merely reiterates existing policy. NPOB 53 (citing 12-ER-2868). First, that is simply not true. The Consent Decree actually requires the County to work with independent experts to develop a *new* policy and provide related training. 12-ER-2868. And it includes concrete requirements for that new policy. 12-ER-2868–69. The Consent Decree then also goes on to prescribe new policies directed at use of restraint devices and disciplinary processes. 12-ER-2870–71.

Moreover, as described above, Non-Profit Appellants' argument is nothing more than a demand for more relief than was negotiated or approved by the district court; it does not demonstrate that the relief actually granted was valueless. Further, their demand in this regard fails to contend with what *could* be negotiated. *See* 1-ER-4; *Hanlon*, 150 F.3d at 1026 (requiring courts to consider the strength of the defendant's case); Fed. R. Civ. P. 23(e)(2)(C)(i) (requiring district courts to consider the risks of litigation). Tellingly, Non-Profit Appellants offer no explanation of what more should have been provided here or whether the County would have agreed to additional obligations.

67

In a related vein, Non-Profit Appellants suggest that the Consent Decree is defective because it allows custodial staff to provide security during inmates' interactions with mental-health staff and therefore does not adequately ensure confidentiality. NPOB 53-54 (quoting 12-ER- 2836-2945). But again, Non-Profit Appellants fail to contend with what is *possible* in a carceral setting; the County must maintain the safety and security of inmates. It cannot enter into a settlement that would force it to abandon that charge. And, as even Non-Profit Appellants acknowledge, the Consent Decree is expressly designed to maximize confidentiality while maintaining appropriate security. 12-ER-2856 ("Defendants shall also ensure that incarcerated persons are provided maximum confidentiality in interactions with telepsychiatry providers. . . .").

For the same reason, there is no merit to Robertson's related argument that the relief provided by the Consent Decree is rendered illusory by various safety-and-security provisions. Robertson OB 27. Again, the County is operating a jail; it cannot and would not enter into an agreement that prevents it from ensuring the safety and security of both inmates and staff. Carving out such a limited exception to a few of

68

the Consent Decree's requirements does not render all relief illusory, and Robertson's arguments fail to demonstrate abuse of discretion by the district court.

Non-Profit Appellants also do not believe that the plan to hire more custodial staff will help and will instead cause more harm to inmates. NPOB 51. In support, they note the opinions of certain inmates. NPOB 51-52 (citing 7-ER-1538, 8-ER-1910). As a threshold matter, it is worth highlighting that increased staffing is just one element of the Consent Decree and not even a central feature of the benefits identified by the district court. *See* 1-ER-5–6, 9. In any event, the inmates' opinions regarding how best to address their concerns create at best a conflict in the evidence. Nor do they explain how the County could possibly implement the other programmatic changes required by the Consent Decree without the additional staff the independent experts found need. Accordingly, they do not demonstrate that the district court clearly erred in reaching a different conclusion based on expert evidence in the record reflecting the need for more dedicated staff. *See*, *e.g.*, 16-ER-3806–07, 3978–81, 3992, 3996–97, 4004, 4006–07.

69

Non-Profit Appellants also cite complaints from inmates about pre-settlement offenses by custodial staff. NPOB 52–53 (citing 7-ER-1476, 1502–03). But again, those are the kinds of concerns that are described in the experts' analyses, the kinds of concerns the Consent Decree is designed to address *once it is implemented*. *See*, *e.g.*, 1-ER-5–8; 16-ER-4013–15. They do not establish an abuse of discretion by the district court in approving the Consent Decree.

Non-Profit Appellants also complain that the district court should not have considered the role of the DOJ in the Consent Decree. NPOB 63–64. But the involvement of a government participant in settlement is one of the *Hanlon* factors that Non-Profit Appellants themselves identify. NPOB 35; *Hanlon*, 150 F.3d at 1026. It is therefore clearly relevant to the district court's analysis.

In a related argument, Non-Profit Appellants suggest that the Consent Decree was defective because the DOJ may not play a sufficiently active role in ensuring future compliance. NPOB 61–63. Their argument is baseless. The fact that the parties did not "create a duty within the DOJ," NPOB 63, is neither surprising—the DOJ being

70

a federal agency beyond the control of any party—nor a reason to find the relief granted by the Consent Decree insufficient as a matter of law.

Finally, Incarcerated and Non-Profit Appellants argue that the Consent Decree should not have been approved because its potential preclusive effect grants the County too much benefit. IOB 12, 34–36; NPOB 55-56; 12-ER-2914. Appellants overstate the case. As the district court noted, the scope of issue and claim preclusion is not as broad as Appellants suggest. 1-ER-8; *accord* Robertson OB 16; 4-ER-577–78. It extends no further than a judgment following trial in this case would have. *Id.* This is accordingly a recitation of an objective legal reality, not a release of any kind. It is also accordingly not a case like *Koby*, 846 F.3d 1074–75, 1080–81, where a settlement was defective due to an overly generous release. In that case, the settlement granted named class members the maximum damages allowed by statute, granted unnamed class members no monetary relief, but then also provided that all class members waived the right to pursue damages in a separate action. *Id.* There are no similar facts here. Indeed, as the district court found, this settlement does not and could not preclude class members' damages claims.

71

Moreover, Appellants' implicit suggestion that the County should have accepted a settlement that did not fully resolve the case is patently without merit. Again, nothing here suggests that the district court abused its discretion in finding the settlement provided real value to the Class and Sub-Class, even if it also provided the County with closure on the case being settled.

### 3. The district court also correctly found no collusion or overreaching in the settlement.

As required by Rule 23(e) and *Hanlon*, the district court also found the award of fees in this case justified and no collusion in the Consent Decree. 1-ER-5, 10–12. Appellants dispute that conclusion, arguing that the Consent Decree's award of fees to Class Counsel demonstrates impermissible collusion and self-interest. IOB 1, 16; Robertson OB 9–10 (citing *Briseño*, 998 F.3d at 1025); NPOB 38–39, 41, 47 (citing *Briseño*, 998 F.3d at 1019; *In re Bluetooth*, 654 F.3d at 947); Wilkins OB 12 (citing *Stanton*, 327 F.3d at 960). As even they acknowledge, this Court rarely overturns a settlement absent "convincing indications" in the settlement that self-interest motivated the agreement. NPOB 46 (quoting *Briseño*, 998 F.3d at 1022).

72

Nonetheless, Appellants argue that there was such clear indications here.

For example, they highlight the presence of a "clear sailing" arrangement in the Consent Decree. NPOB 46-47 (citing *Allen*, 787 F.3d at 1224; *Staton*, 327 F.3d at 960; *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1017 (E.D. Cal. 2019). But an agreement not to oppose plaintiffs' fee request—a request, it bears noting, reduced through negotiation from $2.9 million to $2.1 million and which also includes caps on fees in future years, 1-ER-11—is not forbidden, so long as the case was appropriately litigated, and the settlement provides good value to the class. *See*, *e.g.*, *Campbell*, 951 F.3d at 1127. That is especially true in a case like this that sought only injunctive relief. *Id.* The Consent Decree here is consistent with those principles. 1-ER-4–6. Non-Profit Appellants fail to show an abuse of discretion on based on the fee agreement here.

Various Appellants also argue that the fee award was excessive compared to the injunctive relief provided, and even that the Consent Decree should have provided monetary relief to the Class and Sub-Class. IOB 33; Robertson OB 16-18; NPOB 48–51; Wilkins OB 12. But

19267489.11

this case only ever *sought* injunctive relief to address conditions at Santa Rita Jail. *See* 1-ER-8; 12-ER-3039–3108; 19-ER-4641–99. Any expectation that members of the Class should have received monetary relief in settlement is misplaced. Moreover, as discussed above, the Consent Decree provided meaningful relief to the Class and Sub-Class, and the district court did not abuse its discretion in finding that relief meaningful. Appellants' suggestion that it was not meaningful *enough* to balance out the fees awarded to Class Counsel simply fails to demonstrate clear error.

This is not like the cases where this Court has found a fee award excessive and evidence of a collusive settlement. For example, in *In re Bluetooth*, plaintiffs sought monetary relief for the class but then settled on terms that provided monetary relief only to the named plaintiffs, while granting plaintiffs' counsel fees in an amount nearly 10 times the maximum monetary award. 654 F.3d at 939–40. There are no similar facts in this case. As another example, in *Vargas v Lott*, 787 F. App'x 372, 374–75 (9th Cir. 2019), the district court failed to analyze evidence that the monetary relief provided by settlement would inure to the benefit of very few class members. As a necessary result, it also

74

failed to conduct an appropriate comparison between the limited monetary award and the attorney fees awarded, leading this Court to reverse. *Id.* Again, Appellants have identified no similar defect in the district court's analysis in this case. They have not shown reversible abuse of discretion.

### E. Appellants are wrong when they argue that the Consent Decree inequitably favors the Sub-Class.

Another of the factors district courts should consider when evaluating class settlements and consent decrees is intra-class equity. *See* IOB 16–17, 44; Robertson OB 19; NPOB 54–57; Fed. R. Civ. P. 23(e)(2)(D). While the district court did not use the word "equity" when approving the Consent Decree, its order did analyze the distinct interests of both the Class and Sub-Class and both the present and future members of each, and found benefits for all, including increased mental healthcare, Covid-19 measures, changes to use-of-force policies, and mechanisms for raising and addressing complaints. 1-ER-5–6, 8; *see also* 4-ER-577–79. Here too, Appellants fail to show an abuse of discretion.

19267489.11

The central thrust of Appellants' argument is that the Consent Decree grants more relief to the Sub-Class than to the Class at large. IOB 11–12, 16–17, 37–38. But their characterization of the relief reflects a mere disagreement with the district court's analysis, finding significant benefits for the Class, as well as the Sub-Class. 1-ER-5–6.

This falls short of demonstrating clear error. It is unlike cases finding inadequate intra-class equity, such as those where the named class members received large monetary awards, while absent class members received either no monetary relief or relief in amounts orders of magnitude smaller. *See*, *e.g.*, *Briseño*, 998 F.3d at 1026–27 (finding evidence of collusion in settlement that awarded $7 million in fees to class counsel, while less than a percent of class members would receive any money at all, and all three *In re Bluetooth* factors were present); *Koby*, 846 F.3d 1074–75, 1080–81 (finding unreasonable settlement that granted named class members the maximum damages allowed by statute and unnamed class members no monetary relief); *Staton*, 327 F.3d at 975 (finding abuse of discretion in approval of settlement that granted named class members damages 16-times greater than unnamed class members).

Incarcerated Appellants' argument is also inconsistent with the facts and circumstances of this case. It rests on the assumption that only members of the Sub-Class benefit from improved mental-health treatments and ignores the nature of the claims at issue, which focused on the need for improved mental-health treatments for all persons incarcerated at Santa Rita Jail, not just the members of the Sub-Class who qualify as having a "psychiatric disability." *See*, *e.g.*, 19-ER-4666–82.

Two conclusions flow from this. The first is that Appellants' various demands for wider relief for concerns unrelated to the complaints pleaded in this case are misplaced. Those other concerns were simply not at issue here, could not have been resolved by a favorable judgment, and so did not have any place in the parties' settlement. Second, while it is true that mental-health concerns feature prominently in the common questions pleaded to support class treatment, it is not true that those common questions related only to the Sub-Class or to the individual interests of the Named Plaintiffs. *Compare* 19-ER-4683–84, *with* IOB 10, 40.

77

Consistently, Incarcerated Appellants are similarly wrong when they argue that the benefits of the Consent Decree inure primarily to those with psychiatric disabilities. *See* IOB 11–12, 38, 40. As the district court noted, there is simply no basis for Incarcerated Appellants' repeated assertion that 96% of persons incarcerated at Santa Rita Jail receive no benefit from the Consent Decree. IOB 16 (citing to 1-ER-10–11).

Still, it is true that the Consent Decree confers some benefits just for the Sub-Class, such as a 48-hour response deadline to address urgent disability issues and specific improvements for mental healthcare for those suffering from psychiatric disability. *See* IOB 37–38, 41. But those facts alone do not demonstrate that the district court abused its discretion in finding broad relief to both the Class and Sub-Class.

Another theme in Appellants' arguments is their claim that the Consent Decree expands out-of-cell time for the Sub-Class, while restricting it for the wider Class. IOB 38–39, 41–42; Robertson OB 26. This claim is also inconsistent with the record. First, the out-of-cell times set out in the Consent Decree are new *minimums*, guaranteeing

78

time out of cell for all inmates, and those minimums exceed what applicable regulations require.  4-ER-557, 570, 580–81, 609; 12-ER-2825, 2861–66.  Contrary to Appellants' arguments, the new minimums represent an increase over what was afforded at the time the Consent Decree was negotiated.  12-ER-2825.  Moreover, the County is required to reconfigure outdoor spaces to *maximize* out-of-cell time.  1-ER-5, 7; 4-ER-557, 570; 12-ER-2825, 2865–66.  The addition of these requirements is an improvement for all, not just for the members of the Sub-Class, and the Appellants have not shown that the district court erred in reaching this conclusion.

Appellants also complain that some of the inmates' out-of-cell time may be taken up with "Structured Time," which includes "therapeutic, educational, substance abuse, self-help, religious or other structured programming."  IOB 39; Robertson OB 26; 12-ER-2861–62.  But this ties to a requirement that the County increase programming, which is one of the conditions the evidence indicated was previously inadequate, a benefit shared by both the Class and Sub-Class.  1-ER-5–6; 4-ER-557, 571–72; 12-ER-2822, 2827, 2844, 2853, 2867–68; 16-ER-3806–07, 3982.  The new system for ensuring out-of-cell time and programming thus

79

does not reflect any absence of intra-class equity, and Appellants have not shown an abuse of discretion by the district court on this point.

Finally, Non-Profit Appellants express concern over the impacts of the Consent Decree on other, future litigation. NPOB 54–57 (citing *Lusk*, 2019 WL 7048791 at \*4, \*10). As discussed above, however, their argument rests entirely on overstating the preclusive effect of the Consent Decree, just as the district court concluded. 1-ER-9. The Consent Decree resolved this case, nothing more. Its application to any other case is controlled by the general standards governing claim and issue preclusion and is no broader than it could have been if the case had gone to trial.

### F. The district court adequately evaluated and appropriately responded to the objections submitted.

As Appellants argue, when evaluating a class settlement, district courts must comprehensively explore and give reasoned responses to all non-frivolous objections. Robertson OB 21-24; NPOB 58–60 (citing *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012); *Officers for Justice*, 688 F.2d at 624)). The district court did so, digesting objections

19267489.11

filed by roughly 192 objectors and responding to them all thematically.
1-ER-7–9.

Appellants, however, argue that this categorical approach
constituted an abuse of discretion. They do not argue that the district
court actually failed to address any individual concern, however.
Instead, they argue that the district court was required to respond
separately to each objector individually, even if their objection was
addressed elsewhere. IOB 2, 3, 13-14, 17; Robertson OB 21–24; NPOB
60. Not so.

First, frivolous objections "d[o] not demand a response from the
district court." *In re Volkswagen*, 895 F.3d at 613. There, class
members objected to a settlement agreement between a class of vehicle
owners and a vehicle manufacturer on the grounds that additional
claim-processing steps for class members with liens created
individualized questions of law or fact defeating predominance and that
the long-form notice did not adequately explain the effects of a vehicle
lien on eligibility for settlement benefits. *Id*. The Ninth Circuit
disagreed and determined that the settlement did not deny recovery or
exclude from class membership vehicle owners with liens or loans and

81

the notice explained that the settlement provided additional compensation to the class members with outstanding loans to help them clean up their title and deliver their vehicles to the manufacturer. *Id.* Thus, the court held that frivolous objections or objections that are "faulty on [their] face" do not require a response from the district court. *Id.*

Non-Profit Appellants argue that the district court must specify which objections it finds frivolous. NPOB 59 (citing *Officers for Justice*, 688 F.2d at 624). But as even they acknowledge, that is no longer the law in this Circuit. *See* NPOB 60; *In re Volkswagen*, 895 F.3d at 613 (finding no need for *any* response to objections that are faulty on their face). And, as in *In re Volkswagen*, Appellants here have not identified any specific objection they believe was inadequately addressed and so have not shown any abuse of discretion. *See In re Volkswagen*, 895 F.3d at 613.

Second, and consistently, approval of a settlement is not invalidated by a district court's failure to give a detailed to response to objections by members of a plaintiff class, especially where the underlying suit is complicated with a large class. *Torrisi v. Tucson*

82

*Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir. 1993) (cited with approval in *In re Volkswagen*, 895 F.3d at 613). There, one of the objectors argued that the district court's approval of a settlement should be reversed "because the district court did not give an express, detailed response to the objections." *Id*. The court rejected this argument and held that a district court's failure to give a detailed response to each objection would not render a settlement invalid. *Id*.

Appellants cite no contrary authority for their argument that the district court was obligated to address each individual objection and could not group the objections together. Nor does any appear from research. Indeed, requiring the district court to restate its response to substantively identical objections would serve no legitimate aim. And again, no Appellant has identified a reason that imposing such a formalism on district courts would benefit objecting class members. So long as the district court gave "a reasoned response" to all non-frivolous objections, which the district court did here, there is no abuse of discretion.

Incarcerated Appellants also note the district court's "fiduciary" obligation to protect absent class members, and they argue that the

19267489.11

district court deferred too much to Class Counsel. IOB 43–44 (citing

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 319 (3d Cir. 2011); *Reynolds v.*

*Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002); *Maywalt v.*

*Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995);

*Staton*, 327 F.3d at 972, n.22. But the record does not support their

contention.

For example, following the submission of objections by various

class members, the district court ordered supplemental briefing on a

detailed list of procedural questions and concerns raised by the

objectors. 3-ER-540–42. The parties submitted supplemental briefing

and evidence, 3-ER-435–539, and a joint update on the parties' efforts to

facilitate the participation of objectors in a live hearing, 3-ER-435–41.

And then the district court actually held two days of hearings by video

conference, to ensure all objecting class members had the opportunity to

be heard. 3-ER-257–342; 2-ER-18–255. Moreover, far from deferring to

Class Counsel, the district court's order reflects the role that the DOJ

and Judge Beeler played in ensuring that the settlement was

reasonable and fair. Incarcerated Appellants ignore this evidence and

19267489.11

thus fail to demonstrate that the district court fell short of its obligation to absent class members.

## CONCLUSION

Class Representatives and the County negotiated the Consent Decree at arms' length, after years of litigation and expert consultation, with the supervision and ultimately approval by an independent magistrate judge and the DOJ. It provides meaningful relief to both the Class and Sub-Class, and there is no evidence that it is infected with collusion or self-interest. Appellants have not shown and cannot show the district court abused its discretion when it approved the Consent Decree. This Court should affirm the judgment and allow the County and Class Counsel to continue implementing this beneficial settlement.

DATED: April 27, 2023   HANSON BRIDGETT LLP

By: _____
  PAUL B. MELLO
  ADAM W. HOFMANN
  SAMANTHA D. WOLFF
  *Attorneys for County of Alameda;*
  *Yesenia Sanchez; Karyn Tribble*

19267489.11

## STATEMENT OF RELATED CASES

This brief is filed in four consolidated cases, Case Nos. 22-15275, 22-15355, 22-15363, and 22-15579. County Appellees are not aware of any other related appeals pending at this time.

DATED: April 27, 2023        HANSON BRIDGETT LLP

By: _____
PAUL B. MELLO
ADAM W. HOFMANN
SAMANTHA D. WOLFF
*Attorneys for County of Alameda;
Yesenia Sanchez, in her official
capacity as Sheriff of Alameda
County; Karyn Tribble in her official
capacity as Director of the Alameda
County Behavioral Health Care
Services Agency*

19267489.11

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 22-15275

I am the attorney or self-represented party.

**This brief contains** 13,990 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

⦿ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____ .

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** *(use "s/[typed name]" to sign electronically-filed documents)*

**Date** April 27, 2023

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8** *Rev. 12/01/22*

# ADDENDUM OF PRIMARY AUTHORITIES
## 9th Cir. Rule 28-2.7

**Federal Rules of Civil Procedure,**

Rule 23 ................................................................................88

19267489.11

**Federal Rules of Civil Procedure**

**Rule 23. Class Actions**

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

>  (1) the class is so numerous that joinder of all members is impracticable;

>  (2) there are questions of law or fact common to the class;

>  (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

>  (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if:

>  (1) prosecuting separate actions by or against individual class members would create a risk of:

>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

>  (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

>  (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

19267489.11

available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

(c) Certification Order; Notice to Class Members; Judgment; Issues Classes; Subclasses.

(1) Certification Order.

(A) Time to Issue. At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.

(B) Defining the Class; Appointing Class Counsel. An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).

(C) Altering or Amending the Order. An order that grants or denies class certification may be altered or amended before final judgment.

(2) Notice.

(A) For (b)(1) or (b)(2) Classes. For any class certified under Rule 23(b)(1) or (b)(2), the court may direct appropriate notice to the class.

(B) For (b)(3) Classes. For any class certified under Rule 23(b)(3)--or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement

19267489.11

under Rule 23(b)(3)--the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice may be by one or more of the following: United States mail, electronic means, or other appropriate means. The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;

> (ii) the definition of the class certified;

> (iii) the class claims, issues, or defenses;

> (iv) that a class member may enter an appearance through an attorney if the member so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

(3) Judgment. Whether or not favorable to the class, the judgment in a class action must:

> (A) for any class certified under Rule 23(b)(1) or (b)(2), include and describe those whom the court finds to be class members; and

> (B) for any class certified under Rule 23(b)(3), include and specify or describe those to whom the Rule 23(c)(2) notice was directed, who have not requested exclusion, and whom the court finds to be class members.

(4) Particular Issues. When appropriate, an action may be brought or maintained as a class action with respect to particular issues.

(5) Subclasses. When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.

19267489.11

(d) Conducting the Action.

(1) In General. In conducting an action under this rule, the court may issue orders that:

(A) determine the course of proceedings or prescribe measures to prevent undue repetition or complication in presenting evidence or argument;

(B) require--to protect class members and fairly conduct the action--giving appropriate notice to some or all class members of:

(i) any step in the action;

(ii) the proposed extent of the judgment; or

(iii) the members' opportunity to signify whether they consider the representation fair and adequate, to intervene and present claims or defenses, or to otherwise come into the action;

(C) impose conditions on the representative parties or on intervenors;

(D) require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly; or

(E) deal with similar procedural matters.

(2) Combining and Amending Orders. An order under Rule 23(d)(1) may be altered or amended from time to time and may be combined with an order under Rule 16.

(e) Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class--or a class proposed to be certified for purposes of settlement--may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(1) Notice to the Class.

19267489.11

(A) Information That Parties Must Provide to the Court. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.

(B) Grounds for a Decision to Give Notice. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:

(i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal.

(2) Approval of the Proposal. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

93

(D) the proposal treats class members equitably relative to each other.

(3) Identifying Agreements. The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) New Opportunity to be Excluded. If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Class-Member Objections.

(A) In General. Any class member may object to the proposal if it requires court approval under this subdivision (e). The objection must state whether it applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection.

(B) Court Approval Required for Payment in Connection with an Objection. Unless approved by the court after a hearing, no payment or other consideration may be provided in connection with:

(i) forgoing or withdrawing an objection, or

(ii) forgoing, dismissing, or abandoning an appeal from a judgment approving the proposal.

(C) Procedure for Approval After an Appeal. If approval under Rule 23(e)(5)(B) has not been obtained before an appeal is docketed in the court of appeals, the procedure of Rule 62.1 applies while the appeal remains pending.

(f) Appeals. A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule, but not from an order under Rule 23(e)(1). A party must file a petition for permission to appeal with the circuit clerk within 14 days after the

19267489.11

order is entered, or within 45 days after the order is entered if any party is the United States, a United States agency, or a United States officer or employee sued for an act or omission occurring in connection with duties performed on the United States' behalf. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

(g) Class Counsel.

(1) Appointing Class Counsel. Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

(A) must consider:

(i) the work counsel has done in identifying or investigating potential claims in the action;

(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

(iii) counsel's knowledge of the applicable law; and

(iv) the resources that counsel will commit to representing the class;

(B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs;

(D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and

(E) may make further orders in connection with the appointment.

95

(2) Standard for Appointing Class Counsel. When one applicant seeks appointment as class counsel, the court may appoint that applicant only if the applicant is adequate under Rule 23(g)(1) and (4). If more than one adequate applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class.

(3) Interim Counsel. The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.

(4) Duty of Class Counsel. Class counsel must fairly and adequately represent the interests of the class.

(h) Attorney's Fees and Nontaxable Costs. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.

(2) A class member, or a party from whom payment is sought, may object to the motion.

(3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).

(4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

19267489.11

<u>**PROOF OF SERVICE**</u>

***Ashok Babu et al v. Gregory Ahern et al.***
**Ninth Circuit Court of Appeals - Case No. 22-15275**

**STATE OF CALIFORNIA, COUNTY OF SACRAMENTO**

At the time of service, I was over 18 years of age and not a party to this action. I am employed in the County of Sacramento, State of California. My business address is 500 Capitol Mall, Suite 1500, Sacramento, CA 95814.

On April 27, 2023, I served true copies of the following document described as **ALAMEDA COUNTY APPELLEES' ANSWERING BRIEF** on the interested parties in this action as follows:

**SEE ATTACHED SERVICE LIST**

**BY MAIL:** I enclosed the document in a sealed envelope or package addressed to the persons at the addresses listed in the Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with Hanson Bridgett LLP's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on April 27, 2023, at Sacramento, California.

_____
Emily P. Griffing

**SERVICE LIST**
***Ashok Babu et al v. Gregory Ahern et al.***
**Ninth Circuit Court of Appeals - Case No. 22-15275**

Jeffrey L. Bornstein                        Via ECF
Boersch & Illovsky, LLP
1611 Telegraph Avenue, Suite 806
Oakland, CA 94612
jeff@boersch-illovsky.com

Gregory Brian Thomas                        Via ECF
Temitayo Peters
Burke Williams & Sorensen, LLP
1999 Harrison Street, Suite 1650
Oakland, CA 94612-3501
gthomas@bwslaw.com
tpeters@bwslaw.com

Lisa Ells                                   Via ECF
Ernest Galvan
Kara Jane Janssen
Amy Xu
Rosen Bien Galvan & Grunfeld, LLP
101 Mission Street, 6th Floor
San Francisco, CA 94105-1738
lells@rbgg.com
egalvan@rbgg.com
kjanssen@rbgg.com
axu@rbgg.com

Eric Craig Sapp                             Via ECF
Kellie Walters
Legal Services for Prisoners With
Children
4400 Market Street
Oakland, CA 94608
erics@prisonerswithchildren.org
kellie@prisonerswithchildren.org

Yolanda Huang                          Via ECF
P.O. Box 5475
Berkeley, CA 94705
yolanda@yhuanglaw.com

Reginald Robertson, PFN: APM873        Via US Mail
SANTA RITA COUNTY JAIL
5325 Broder Boulevard
Dublin, CA 94568

Keenan G. Wilkins, AN 2387             Via US Mail
CHCF - CALIFORNIA HEALTH
CARE FACILITY
P.O. Box 213040
Stockton, CA 95213