Case No. 22-15355

Related Cases [22-15275, 22-15355, 22-15579]

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

ASHOK BABU; et al.,
Plaintiffs - Appellees
v.
TYLER ABBOTT; et al.,
Objectors - Appellants,
v.
GREGORY J. AHERN, et al.,
Defendants - Appellees,
and
ANDRE GRIFFIN; et al.,
Defendants.

---

On Appeal from the United States District Court
for the Northern California, San Jose, Case No. 5:18-cv-07677-NC
The Honorable Nathanael M. Cousins

---

## REPLY BRIEF OF OBJECTORS - APPELLANTS

---

Yolanda Huang (SBN 104543)
LAW OFFICES OF YOLANDA HUANG
2748 Adeline Street,  Suite A
Berkeley, California 94703
Attorney for Objectors/Appellants

i

Complete List of Objector/Appellants

TYLER ABBOT, ANTHONY AARON;
ROBERT ABEYTA; DAYNA ALEXANDER;
RAS ALLEN; ANDREW ANCHONDO;
EARL ANTHONY; NICHOLAS ARANDA;
TIARA ARNOLD; ALFONSO ARROYO;
GEORGE BANKS; RONALD BARRON;
SHAWANDA BLACK; AVANTE BRADLEY;
URSELL BRANDON; NICOLE BRATTON;
JASON BROWN; JEFFREY BRYDEN;
BRANDON BURNS; HAMLETT CARRERO;
MICHAEL CASTILLO; JOSHUA CHAVEZ;
CARLTON COLEMAN;
JOHNEY DAVIS; DASHIAUNA DE MARTRA;
MIRANDA DEVLIN; J. DOE;
ROBERT DOLPH; ALAN DRISCOLL;
NICOLE ELMORE; WILLIAM EPTING;
LIPINE FAAFIU; ADRIANA FALCON;
EARL FOWLER; JACOBI GAINES;
ELEAZAR GARCIA; OSCAR GARCIA;
JOSEPH GASKINS; OSVALDO GIL;
JONATHAN GLOEDE; DANIEL GONZALEZ;
ANDRE GRIFFIN; KENT HARRIS;
RANDY R. HARRIS; STEPHEN M. HEAD;
RAFAEL HERRERA; DARRYL HICKMAN;
RICHARD HILL; ALEXANDER INGUANZO;
ALBERT JONES; DAMON L. JONES;
KATRISH JONES; LEONARD JONES;
TERRANCE JONES; DARNELL KENT;
RAYANN MARIE KRUM;
MICHAEL LOCKHART;
JAMES E. MALLETT; GLENN MARTE;
DAVID MARTIN; KEVIN LEE MCCULLOM;
WALTER MCDUFFIE; JORGE MEJIA;
ISMAEL MENDOZA; KEVIN MILLER;
DAVID MISCH; JACLYN MOHRBACHER;
APRIL MORROW; CHRISTOPHER MOSS;
RICHARD MYERS; RONALD NALLS;
TOMMY NAVARRETTE; JAMES PACE; ROBERT
PAIGE; TANEASHA PARISH-SAUCER;

MELISSA PEREZ; TIMOTHY PHILLIPS;
MATTHEW PIERCE; FRANKIE PORCHER;
DAHRYL LAMONT REYNOLDS;
ISAIAH RICHARD; ZACHARY RIDEAUX;
WILLIAM RIEDY; JOE ROBINSON;
MARIUS ROBINSON; TREVOR SIMPSON;
STEVEN SMITH; JAMES SPINGOLA;
JOSEPH TABRON;  PILAAR THOMAS;
TIMOTHY N. THOMPSON;
TYLER UNDERWOOD;
MARTIN TREVINO VARGAS;
DAVID VIGIL; TREVOR GEORGE WALSH;
JAYLYNN WALTON; ERIC L WAYNE;
LAMONT D. WILLIAMS; LINDSAY WILLIAMS;
PATRICIA WILLIAMS; SERGIO WILLAMS;
TASHAWN WILLIAMS; ABRAHAM WILSON;
OTIS WYATT; JOVAN ZACHARY;
LEANNA ZAMORA,

## TABLE OF CONTENTS

I.   **INTRODUCTION** ........................................................................ 1

II.   **ARGUMENT** ................................................................... 4

  A. *The District Court Failed To Apply The Legal Standards Of Rule 23(E)* ............................................................................... 4

  B. *The District Court Failed To Give Notice To Future Class Members As Required By Rule 23(E)* ................................................... 11

  C. *The Consent Decree Should Be Set Aside Because The Named Plaintiffs Do Not Adequately Represent The Class And Do Not Have Claims Typical Of The Class* ................................................... 13

  D. *The Consent Decree Should Be Set Aside Because Class Counsel Does Not Adequately Represent The Class Due To A Conflict Of Interest* ............................................................................... 14

  E. *The Consent Decree Shoiuld Be Set Aside Because It Fails To Benefit The Majority Of The Class* ........................................ 16

  G. *The District Court Committed Reversible Error By Failing To Evaluate And Respond To Objections To The Consent Decree* ........... 19

  H.   *Plaintiff-Appellees Do Not Contest That The Main Class Receives Little To No Benefits From The Consent Decree* .................................. 21

III.   **CONCLUSION** ........................................................................ 22

## TABLE OF AUTHORITIES

### Cases

*Apple Inc. Device Performance Litig.*, 50 F.4th 769, (9th Cir. 2021) ... 7

*Briseno v. Henderson*, 998 F. 3d 1014, (9th Cir. 2021) .................... 4, 6

*Campbell*, 951 F.3d ....................................................................... 6, 11

*Frank v. United Airlines, Inc.*, 216 F.3d 845, (9th Cir. 2000)............ 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, (9th Cir. 1998).............. 1, 4

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).......................................................................................15, 16

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, (9th Cir. 1982)................................................................................................ 7

*Perks v. Activehours*, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) .... 6

*Saucillo v. Peck*, 25 F. 4th 1118, (9th Cir. 2022) ............................... 11

### Rules

Rule 23(e) ...............................................................................passim

Rule 23(e)(1)(B) ............................................................................ 11

Rule 23(e)(3)..................................................................................... 6

## I.    INTRODUCTION

Objectors/Appellants are numerous prisoners in a jail run by Defendants.  Objectors/Appellants are also class members in a class action against Defendants.  Objectors/Appellants objected to a consent decree approved by the district court settling the class action that paid class counsel millions of dollars, provided Defendants with a potential shield against most future lawsuits by prisoners, yet provided no monetary benefit to Objectors/Appellants and only limited injunctive relief that benefits at best 10 percent of the class.

Appellees RBGG and Alameda County do not dispute that the district court failed to apply the legal standards to Rule 23(e), instead reciting factors articulated in a 1998 Ninth Circuit opinion, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  Appellees, however, insist that the district court's failure is not reversible error, arguing that that it was a mere "technical defect[] in the approval process."

Appellees are wrong.  Rule 23(e) itself mandates that the district court must apply the rule's legal standards when considering whether to approve a class action settlement.  The district court's failure to do so, as case law makes clear, is reversible error.

Appellees also argue that the district court was not required to give notice to future class members, asserting that there is "no basis upon which the parties could have meaningfully identified people who will one day become members of the Class, in order to provide them notice." Appellees are wrong again. Amended Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." The district court could have taken meaningful steps to do so but made no effort to provide notice to any class member not currently in custody in Santa Rita Jail.

Appellees also argue that the named plaintiffs adequately represented the class and have claims typical of the class because all of the named plaintiffs "were members of the general class" and "[t]he fact that seven of the eight named plaintiffs were also members of the sub-class does not establish a conflict of interest." This argument also fails. There is an inherent conflict of interest between the Disability Subclass represented by the named plaintiffs and the majority of the class members. The Disability Subclass has a vested interested in improving conditions for those inmates with psychiatric disabilities, and this, the Consent Decree does. However, the

Consent Decree provides little actual benefit, if any, to the majority of class members.

Appellees argue that Class Counsel adequately represented the class without collusion, arguing that the district court found "on record evidence that the Consent Decree was negotiated at arm's length, following extensive investigations and discovery, and with the independent involvement of Judge Beeler and the DOJ." Appellees' argument does not withstand scrutiny. Substantial evidence indicates that the consent decree was not negotiated at arm's length; that class counsel's $2.1 million fee, with an additional $1.9 million to be paid over the course of the consent decree, is not reasonable; and the case was not appropriately litigated.

Appellees argue that the Consent Decree benefits all of the class members equitably (Defendant/Appellee AB. 63). However, Appellees fail to articulate how it does so. In fact, many items cited by the district court and Appellees as "[s]ome of the Consent decree's benefits for Class Members," only benefit Disability Subclass members.

Finally, Appellees argue that the district court properly evaluated and responded to the objections by the 192 objectors by

3

"responding to them all thematically." In fact, the district court did not address these objections in a reasoned response.

For all of these reasons, the Consent Decree should be set aside.

## II. ARGUMENT

### A. THE DISTRICT COURT FAILED TO APPLY THE LEGAL STANDARDS OF RULE 23(e)

Appellees do not dispute that the district court failed to apply the legal standards to Rule 23(e) but instead recited the requirements as articulated in a 1998 Ninth Circuit opinion, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). Appellees, however, insist that the district court's failure is not reversible error, arguing that that it was a mere "technical defects in the approval process." (Defendant/Appellee AB. 48.)

Appellees are wrong. The district court is required to consider the legal standard set forth in Rule 23(e) in addition to the factors stated in *Hanlon*. As this Court explained in *Briseno v. Henderson*, 998 F. 3d 1014, 1023-24 (9th Cir. 2021):

> Rule 23(e) imposes on district courts an independent obligation to ensure that any class settlement is "fair, reasonable, and adequate," accounting for the interests of absent class members. Fed. R. Civ. P. 23(e)(2). . . . Before the 2018 amendment, Rule 23 stated that class settlements should be "fair, reasonable, and adequate" but did not elaborate. Like our sister circuits, we filled in the

gaps, instructing courts to consider the following factors (sometimes called "*Hanlon* factors" or "*Staton* factors") in assessing whether a settlement is "fair, reasonable, and adequate". . . .

In December 2018, Congress and the Supreme Court amended Rule 23(e) to set forth specific factors to consider in determining whether a settlement is "fair, reasonable, and adequate," including:

> 23(e)(2)(C): [Considering whether] the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).
> 23(e)(2)(D): the proposal treats class members equitably relative to each other.
> Fed. R. Civ. P 23(e)(2)(C)–(D) (emphasis added).

Under this revised text, district courts must now consider "the terms of any proposed award of attorney's fees" when determining whether "the relief provided for the class is adequate." Fed. R. Civ. P. 23(e)(2)(C)(iii). While none of our sister circuits has yet directly addressed what this provision specifically requires, the plain language indicates that a court must examine whether the attorneys' fees arrangement shortchanges the class. In other words, the new Rule 23(e) makes clear that courts must balance the "proposed award of attorney's fees" vis-à-vis the "relief provided for the class" in determining whether the settlement is "adequate" for class members.

*Briseno*, 998 F. 3d at 1023-24. *See also Perks v. Activehours*, 2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ("In addition to the Hanlon factors, the 2018 amendments to Rule 23 established a uniform set of factors courts *must* consider when determining whether a settlement is fair, reasonable, and adequate, including whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.") (emphasis added).

As the County states in its brief, a district court abuses its discretion when it fails to apply the correct legal standard. *Campbell*, 951 F.3d at 1121. Moreover, as the County also notes, a district court's determination of fairness is held to a "higher procedural standard," requiring exploration of all factors prescribed by Rule 23(e) and a reasoned response to all non-frivolous objections.

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2021); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982). (Defendant/Appellee AB. 32-33).

Here, as Appellees concede, the district court did not make the required Rule 23(e) determinations. The district court failed to properly evaluate: (1) whether the future class members would be bound by the proposal and therefore failed to direct that appropriate notice be given to the entire class as described; (2) whether the representation of class members by class representatives and class counsel was reasonable; and (3) whether the Consent Decree treated class members equitably. Instead, the district court justified its decision through its deference to class counsels' support for the Consent Decree [ER 6]; to class counsels' claim that class counsel adequately represented the class; and to class counsel's endorsement of the consent decree as fair, adequate and reasonable [ER 6]. The district court also erred by using a balancing of interests standard in approving the Consent Decree, stating that despite the Consent Decree's flaws, it would approve the Consent Decree because there was a "pressing need for reform the Jail's policies and procedures." [ER 7].

Moreover, the district court ignored many of the specifics of Objectors' objections, dismissing them as either topics not at issue in this case, or demonstrating that reform is required. [ER 7]. The district court also did not address any of the fundamental objections raised regarding the Consent Decree's lack benefits for Class Members. Objectors repeatedly stated that for Class Members in the main class, the Consent decree would provide less clinical mental health care (ER Mohrbacher, p. 8) and no additional out of cell time for the majority of Class Members. (TR 145:3-7, 11-14; 145:19-25, ER 1536) In fact, the four hours per day out of cell time standard under the Consent Decree is a reduction from 8 to four hours in the amount of out of cell time of almost 50% for those in general population [ER 1536]. The finding that the district court made that the Consent Decree would provide "a new (over four times higher) minimum out-of-cell time requirement" [ER 5] is in error. The four hours per day out of cell time specified in the Consent Decree is an increase for the Sub-Class, but a reduction for those in the main class. [ER 1536] Yet, the district court found that the Consent Decree would provide "a new (over four times higher) minimum out-of-cell time requirement" [ER 5] by ignoring the many objections to this fundamental deprivation which the Consent Decree imposes. The

expert report from Dr. Kerry Hughes (ER  3983) only addressed out of cell time for inmates in the "segregation and mental health units" – the inmates in the sub-class, not in the general population or the main class.  And Dr. Kerry's recommendations for programming only addresses "inmates who are housed in mental health and segregation units" [ER-3997].  The Consent Decree on programming states that the goals are "suicide prevention" and "equal access to incarcerated persons with disabilities".  [ER-2867]. Again, these are all inmates in the Disability Subclass, not the Main Class.  There is no discussion in Dr. Kerry Hughes' recommendations for the mental health needs of those inmates in general population, and the Consent Decree reflects the priority, which are the needs if the Disability Subclass.  This demonstrates that the attention and focus of the Babu litigation was on the needs of the disability Subclass, and not on the Main Class, so there is as a result, the Main Class derives little by way of benefits.

Similarly the expert report from Terri McDonald also clearly focuses on the disability Subclass.  Her comments were on "out of cell time in restricted units" [ER-4006]. Nowhere does her report discuss out of cell time for general population inmates.  Under the section for programming, she comments "[i]nmates in restricted and closed housing units have less opportunity for programming…." (ECF-4008),

9

again not commenting on general population inmates. Four of the six remaining sections of the McDonald report, Security Checks, Safety Cells, Administrative Separation, and Morbidity and Suicide Reviews also focus on the disability Subclass. While the trial court cites the "implementation of an updated written use-of-force policy" as one of the benefits for Class Members, a closer examination shows otherwise. The Consent Decree's six specific requirements use-of-force (ER 2868-2869) primarily address review of incidents of use-of-force. The single section, section (5) requiring de-escalation, which would appear to have the greatest impact in reducing use of force and harm to all inmates, specifically only requires de-escalation and the consultation of mental health personnel for "individuals with known Psychiatric Disabilities…" (ER 2869). It is perplexing that even regarding a required improvement that would benefit all inmates, such as de-escalation of use of force, Plaintiffs/Appellees limited the Consent Decree so that this benefit applied apply only to the Disability Subclass. This underscores the paucity of benefits for the majority of class members and what is fundamentally flawed about the Consent Decree.

The district court's application of the wrong legal standard in its Order Granting Final Approval of the Consent Decree was an

abuse of discretion. *Saucillo v. Peck*, 25 F. 4th 1118, 1129 (9th Cir. 2022); *Campbell*, 951 F.3d at 1121.

**B.    THE DISTRICT COURT FAILED TO GIVE NOTICE TO FUTURE CLASS MEMBERS AS REQUIRED BY RULE 23(e)**

Appellees argue that Appellants' demand for notice to unidentified persons who might become class members in the future is unreasonable and impracticable, stating "that Inmate Appellants articulate no basis upon which the parties could have meaningfully identified people who will one day become members of the Class, in order to provide them notice." (Defendant/Appellee AB. 39.) Appellees also argue that in any event, there "was ample notice outside of the Jail" given that "Plaintiffs posted the notice and Consent Decree on their public website in multiple languages, garnered extensive press coverage, and engaged with community organizations repeatedly." (RBGG AB 33.)

Appellees are wrong. Amended Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal . . . ." This codifies the general caselaw that due process rights attach when a consent decree has preclusive effect. Although the Consent Decree states that it was

providing "notice to the Class", actual notice was only provided to those members who were currently in custody at the time through posting the notice at the jail; posting on the tablets used by inmates at the jail; and posting on the jail's television-notification system inside the jail. The notice was also posted on class counsel's website. While the Consent Decree states that the notification included "(3) posting notice on the tablets used by class members," which implied that all class members received notice, in fact the only tablets involved were tablets used by inmates currently in custody at Santa Rita Jail. There was no effort to provide notice to any class member not currently in custody in Santa Rita Jail. Class members not currently in custody never received notice.

This Court should follow *Frank v. United Airlines, Inc.*, 216 F.3d 845, 852-853 (9th Cir. 2000), and hold that the Consent Decree either does not have preclusive effect as to future class members; those individuals who in the future find themselves incarcerated in Santa Rita Jail or, in the alternative, find that the Consent Decree's preclusive effect on future class members combined with the failure of notice points to lack of representation by class counsel and is therefore, a violation of the future class members' rights to due process. The lack of representation and failure of notice renders the

Consent Decree void as to any and all class members not in custody at the time the order approving the Consent Decree was signed.

### C. THE CONSENT DECREE SHOULD BE SET ASIDE BECAUSE THE NAMED PLAINTIFFS DO NOT ADEQUATELY REPRESENT THE CLASS AND DO NOT HAVE CLAIMS TYPICAL OF THE CLASS

Appellees argue that the named plaintiffs adequately represent the class because all of the named plaintiffs "were members of the general class" and "[t]he fact that seven of the eight named plaintiffs were also members of the sub-class does not establish a conflict of interest." (Defendant/Appellee AB. 57-58.) Appellees are wrong.

The named Plaintiffs were all inmates with serious mental health issues, with seven of the eight having a psychiatric disability and thus members of the Disability Subclass. As set forth in detail in Appellants/Objectors opening brief, the Disability Subclass was at most 10% of the total jail population. (ECF 111-5.) All eight named Plaintiffs were incarcerated in restricted housing. The single named Plaintiff who was not a member of the Disability Subclass was confined in restricted housing. The total of all inmates in restricted housing account for only 40% of the total inmate population. (ECF

111-5.)  No named Plaintiff was a member of the general population in Santa Rita Jail.

There is an inherent conflict of interest between the Disability Subclass represented by the named plaintiffs and the majority of the class members.  The Disability Subclass has a vested interested in improving conditions for those inmates with psychiatric disabilities, and this, the Consent Decree does.  For those with psychiatric disabilities, the Consent Decree increases out of cell time, mandates programming, removes restrictions within the restricted living housing units, and establishes clear definitions and metrics for the level of mental health care inmates with psychiatric disabilities should receive.  However, as explained in detail in Appellants/Objectors' opening brief, the Consent Decree provides little actual benefit, if any, to the majority of class members.

**D.    THE CONSENT DECREE SHOULD BE SET ASIDE BECAUSE CLASS COUNSEL DOES NOT ADEQUATELY REPRESENT THE CLASS DUE TO A CONFLICT OF INTEREST**

Appellees argue that Class Counsel adequately represented the class without collusion, arguing that the district court found "on record evidence that the Consent Decree was negotiated at arm's

length, following extensive investigations and discovery, and with the independent involvement of Judge Beeler and the DOJ." (Defendant/Appellee AB. 60.) Appellees also argue that class counsel's initial fee of $2.1 million is reasonable, having been negotiated down from $2.9 million, and that the case was "appropriately litigated" by Class Counsel (Defendant/Appellee AB. 73) asserting that Class Counsel extensively evaluated the merits of the case and their positions for four years before agreeing to the Consent Decree. (RBGG AB 39.)

Substantial evidence indicates, however, that the consent decree was not negotiated at arm's length; that class counsel's $2.1 million fee, with an additional $1.9 million to be paid over the course of the consent decree, is not reasonable; and the case was not appropriately litigated.

When class counsel is "amply rewarded" and the class receives no monetary distribution but only injunctive relief, there is possible collusion between class counsel and defendants that renders the representation of class counsel inadequate. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011). As named plaintiff Brandon Jones complained in filings with the district court, Plaintiffs' class counsel sought and obtained in the Consent Decree,

with minimal effort, a huge award of attorney's fees. Yet that same consent decree, as explained in detail in Appellants/Objectors' opening brief, provides little relief to the majority of the class while potentially bestowing great benefits upon Defendants. Plaintiffs' class counsel has a conflict of interest that renders plaintiffs' class counsel representation inadequate. *In re Bluetooth Headset Prod. Liab. Litig.*, *supra*.

Defendants potentially reap great benefits from the Consent Decree. As explained in detail in Appellants/Objectors' opening brief, by incorporating broad and numerous subjects under the umbrella of mental health care, the consent decree may provide significant benefit to Defendants in this pending litigation, potentially precluding many claims. Defendants demonstrated their valuation of the benefit of the Consent Decree by agreeing to pay class counsel $4 million in attorney's fees and costs.

## E.    THE CONSENT DECREE SHOIULD BE SET ASIDE BECAUSE IT FAILS TO BENEFIT THE MAJORITY OF THE CLASS

Appellees argue that the Consent Decree benefits all of the class members equitably (Defendant/Appellee AB. 63). Appellees fail, however, to convincingly articulate how it does so. Rather, Appellees

concede, as they must, "that mental-health concerns feature prominently in the common questions pleaded to support class treatment " (Defendant/Appellee AB. 77) and that "it is true that the Consent Decree confers some benefits just for the Sub-Class, such as a 48-hour response deadline to address urgent disability issues and specific improvements for mental healthcare for those suffering from psychiatric disability." (Defendant/Appellee AB. 78.)

In fact, the District Court ignored the Consent Decree's disparity in benefits between the Disability Subclass and the Prisoner Class. As set forth in detail in Appellants/Objectors' opening brief, many items cited by the district court and Appellees as "[s]ome of the Consent decree's benefits for Class Members," only benefit Disability Subclass members. For example, the updated policy on use of force only requires the inclusion of Behavioral Health staff in planned use of force "on individuals with known Psychiatric Disabilities"; the new classification system is directed towards those in the newly named "Restrictive Housing" and therapeutic housing for those with psychiatric disabilities; the Consent Decree mandates new minimum – out of cell time requirements – but only for those in restricted housing; for those inmates in general population, the minimum specified in the Consent Decree is actually less than what

17

has been available in the past for general population. Finally, the inmate council proposed in the Consent Decree has no substance because it only provides "a venue to raise . . . possible ways to improve living conditions at the Jail." (ECF 266-1.) There are no metrics, no time frame to implementation, no review standards, not even a requirement that the Jail even consider inmate suggestions or give reasoned responses for denying inmate suggestions. (ECF 266-1.)

In sum, the named Plaintiffs' failure to adequately represent the entire class is demonstrated by the Consent Decree's overall lack of benefit or improvement in basic conditions of confinement for the majority of inmates, those in general population, at Santa Rita Jail. This is in contrast to significant changes mandated by the Consent Decree for those small number of inmates in the psychiatric Disability Subclass. Not only is there a paucity of improvement in basic conditions of confinement for the majority of inmates at Santa Rita Jail, the Consent Decree actually will reduce the amount of available outdoor recreation space, reduce out of cell time, and reduce available mental health care for the majority of inmates who are not psychiatrically disabled.

18

## G. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY FAILING TO EVALUATE AND RESPOND TO OBJECTIONS TO THE CONSENT DECREE

Appellees argue that the district court properly evaluated and responded to the objections by 192 objectors by "responding to them all thematically" (Defendant/Appellees AB 80-81), stating that "Appellants cite no contrary authority for their argument that the district court was obligated to address each individual objection and could not group the objections together." (Defendant/Appellees AB 83.)

Appellees set up a straw man argument. Appellants/Objectors are not suggesting that the district court was obligated to address each individual objection. However, the district court dismissed almost all of the valid objections voiced by inmate class members. As set forth in detail in Appellants/Objectors' opening brief, Multiple objections stated that under the Consent decree, high functioning inmates with mental illness who now receive clinical care every thirty days, would, under the Consent Decree, only be provided clinical support once every 60 days, and Psychiatry service once every

90 days. (ER-1663, ER-2941)  The district court did not address these objections in a reasoned response.

Other substantive objections which the District court failed to address, included: a) The Consent Decree was not concrete and specific; b) No transparency, accountability or consequences for the Sheriff failing to comply with the Consent Decree, and the need for independent monitoring; c) No Mental Health Assessments for current incarcerated inmates; d) Therapeutic Housing Unit not defined; e) The Consent Decree does not address the overuse of psychiatric drugs; f) Sheriff deputies need mental health assessments and mental health services; g) No separate requirement for outdoor time; h) Dividing up the yard makes it smaller and less usable; i) Mental Health Staff lacks cultural competency. (Appellants/Objectors OB 54-56.)

In response to the 110 written and 37 spoken objections, the district court stated "many spoke about inhumane conditions at the Jail, citing minimal out-of-cell time, lack of access to mental health resources, an unresponsive grievance process, and unchecked uses of force.  The Court agrees that these conditions are unconstitutional, and they demonstrate the need for the reforms mandated in the Consent decree."  (ER-7)  Yet, by way of example, the reforms to the

grievance process required by the Consent Decree only specify that the jail provide inmates with access to paper forms, and "evaluate the tracking and metrics system for grievances". [ER- 2872]. Grievances affect all inmates, but there is nothing in the consent decree which improves the grievance process or requires the jail to be more responsive through its grievance process. Simply tracking the metrics is not addressing the problem, and does not warrant class members loss of rights through issue preclusion. The trial court's summary dismissal of objectors' concerns is not a reasoned response to serious, non-frivolous objections.

## H. PLAINTIFF-APPELLEES DO NOT CONTEST THAT THE MAIN CLASS RECEIVES LITTLE TO NO BENEFITS FROM THE CONSENT DECREE

Plaintiff-Appellees do not discuss the particulars of the objections raised by Appellants. Instead, Plaintiff-Appellees rely on the district court's "finding[s]" [Plaintiff-Appellees OB, 1, 47, 45, 52, 57, 58, 63, 66]. Plaintiff-Appellees never identify what specific benefits the main class receive from the Consent Decree. Instead, Plaintiff-Appellees' brief states that the Consent Decree requires "a "formal processes for admitting, reviewing, and releasing people into restrictive settings, which are being developed in conjunction with

and monitored by a joint expert and Plaintiffs". (Plaintiff-Appellees OB -46). This admission highlights that the formal process is for those inmates assigned to restrictive settings – those in the Disability Subclass; and that this process was developed and monitored by the joint expert, Dr. Kerry, whose report does not discuss nor make recommendations for inmates in the general population – those inmates in the Main Class.

## III.  CONCLUSION

Objectors/Appellants do not contest that the Consent Decree provides improvements in the conditions of confinement for the Disability Subclass at Santa Rita Jail.  However, the majority of the class, including Objectors/Appellants, receive little, if any, benefits. Far from being a comprehensive reform, the Consent Decree leaves many of the existing conditions for the majority of the class intact, and actually reduces the amount of out of cell time for the inmates in the Main Class.

Because the district court applied the incorrect legal standard in issuing the Order Approving the Consent decree, the district court's conclusions are, in short, indefensible, and an abuse of discretion.  This Court should reverse the Order Approving the Consent Decree.

July 21, 2023          Respectfully submitted,

                    */s/ Yolanda Huang*
                      Yolanda Huang
                      LAW OFFICE OF YOLANDA HUANG
                      2748 Adeline Street, Suite A
                         Berkeley, CA 94703
                      (510-329-2140)
                      Yhuang.law@gmail.com

                    *Attorney for Objectors/Appellants*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4915 words.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Century Schoolbook 14-point font.

Respectfully submitted,

*/s/ Yolanda Huang*
Yolanda Huang