# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

CASE NO. 22-15275
CONSOLIDATED WITH CASE NOS. 22-15355, 22-15363, & 22-15579

ASHOK BABU, et al.
Plaintiffs – Appellees
vs.

AMERICAN FRIENDS SERVICE COMMITTEE, et al.,
Objectors – Appellants

vs.

COUNTY OF ALAMEDA, et al.
Defendants – Appellees

_____

On Appeal from the United States District Court for the
Northern District of California, San Jose

5:18-cv-07677

The Honorable Nathanael Cousins, Magistrate Judge

_____

## ORGANIZATION APPELLANTS' REPLY BRIEF

Kellie Walters (SBN 342755)
Eric C. Sapp (SBN 240372)
Legal Services for Prisoners with Children
4400 Market Street, Oakland, CA 94608 (415)-625-7046
kellie@prisonerswithchildren.org, erics@prisonerswithchildren.org
Attorneys for Objectors-Appellants

1

## Table of Contents

*I.* Table of Authorities ................................................................... **2**

*II.* Organization Objector-Appellants Have Standing to Appeal ............................... **4**

    A. Organization Objector-Appellants Meaningfully Participated in Lower Court Proceedings .......................................................................... **5**

    B. The Material Interests of Organization Objector-Appellants, and their Employees, Members, and/or Service-Beneficiaries, Are Impacted By the Settlement .......................... **8**

*III.* District Court Abused Its Discretion in Deeming The Settlement Fair, Adequate And Reasonable ............................................................... **10**

    A. The District Court Was Required to Apply Heightened Scrutiny to the Consent Decree and Did Not Do So ................................................................. **10**

    B. Hundreds of Class Members Have Complained About the Inadequate Representation of Class Counsel and The Representatives and Have Gone Unheard ..... **12**
        1. Class Counsel ........................................................................ 12
        2. Class representatives ................................................................ 15

    C. The District Court Turned a Blind Eye to Evidence of Collusion ............................... **16**

    D. Contrary to What the Court Found, the Consent Decree Does Not Provide Adequate Relief ................................................................................. **20**

*IV.* Constitutional Structure is Foundational for Analyzing the Judicial Power .... **23**

    A. The Authority of a Magistrate Judge to Exercise Full Civil Jurisdiction is Subject Matter Jurisdiction That Must Meet Constitutional Requisites ......................... **26**

    B. The Personal Rights to Consent, or Refuse Consent, of Absent Class Members Were Not Waived .............................................................................. **35**

*V.* Definition of Plaintive Class Does Not Comport With Current Standing Doctrine ................................................................................. **39**

*VI.* Conclusion ......................................................................... **44**

## I.   Table of Authorities

**CASES**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ......... 10
*Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438 (9th Cir. 1987) ............................................. 5
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n. 5 (2013) ................................................... 46
*Day v. Persels & Assocs., LLC*, 729 F.3d 1309 (11th Cir. 2013) .................................................. 39
*De Bernardi v. City & Cty. of San Francisco*, 2021 U.S. Dist. LEXIS 102721 ................................... 19
*Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006) ................................................... 48

*Devlin v. Scardelletti*, 536 U.S. 1 (2002) .......................................................................... 9

*Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) ........................... 37

*Epic Games, Inc. v. Apple, Inc.*, No. 21-16506 (9th Cir. Apr. 24, 2023) ......................... 21

*Espinosa v. Ahearn*, 926 F.3d 539 (9th Cir. 2019) ......................................................... 21

*Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004) .......................................... 4

*Hispanic Society of New York City Police De* .................................................................... 9

*In re Bluetooth*, 654 F.3d at 947 ....................................................................................... 10

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) ............... 44

*In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 555 (7th Cir. 2017) .. 11

*Insurance Corp. of Ireland v. Compagnie des Bauxites* ................................................... 29

*Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996) .................... 14

*Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999) ...................................................................... 9

*Keith v. Volpe*, 118 F.3d 1386, 1391 (9th Cir. 1997) ......................................................... 7

*Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021) ................................................................... 21

*Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017) ....................................... 14

*Koby v. ARS National Services, Inc.*, 846 F.3d 1071, 1078 (9th Cir. 2017) ................... 38

*Lowery v. Rhapsody Int'l*, No. 22-15162 (9th Cir. June 7, 2023) ................................... 26

*Lujan v. Defenders of Wildlife*, 504 U. S. 555 (1992) ...................................................... 46

*Mazza v American Honda Motor Co.*, 666 F.3d 581, 585, 594-595 (9th Cir. 2012) ........ 48

*McAdams v Robinson*, 26 F.4th 149,157 (4th Cir. 2022) ................................................. 37

*Musgrove v. Jackson Nurse Professionals*, LLC, 2022 U.S. Dist. LEXIS 112339 ........... 16

*Olean Wholesale Grocery v. Bumble Bee Foods*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022) .. 48

*Pearson*, 772 F.3d at 787 ................................................................................................... 14

*Phillips Petroleum Co. v Shutts, et al.*, 472 U.S. 797, 811-812 (1985). ........................... 14

*Radcliffe v. Hernandez*, 715 F.3d 1157 (9th Cir. 2013) .................................................. 13

*Roes v. SFBSC Mgmt.*, 944 F.3d 1035 (9th Cir. 2019) ................................................... 21

*Sackett v. U.S. Env't Prot. Agency*, 8 F.4th 1075, 1089 (9th Cir. 2021) ........................ 37

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999) ...... 6

*Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022)) .............................................................. 43

*SFBSC Mgmt.*, 944 F.3d at 1043 ....................................................................................... 10

*Shakman v. Clerk of Cir. Ct. of Cook Cnty.*, 969 F.3d 810 (7th Cir. 2020) ................... 10

*Starbuck v. Murray*, 5 Wendell 148 ................................................................................. 34

*Stoll v. Gottlieb*, 305 U.S. 165 ......................................................................................... 35

*Summers v. Earth Island Institute*, 555 U. S. 488 (2009) ............................................... 46

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)
(quoting *Reynolds*, 288 F.3d at 279) ............................................................................ 11

*Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) .......................................... 50

*Thompson v. Whitman*, 85 U.S. 457 ................................................................................. 34

*United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.I*, 945 F.3d 1237, 1241
(9th Cir. 2020) ................................................................................................................... 4

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
931 F.2d 177 (2d Cir. 1991) ............................................................................................ 9

*Williams v. Gen. Elec. Capital Auto Lease, Inc.* .............................................................. 36

*Zuern v. IDS Prop. Cas. Ins. Co.*, 2021 U.S. Dist. LEXIS 99951 ................................... 20

## STATUTES

28 U.S.C. §636 ................................................................................................................... 28

**RULES**

Federal Rule of Civil Procedure 23(e) ........................................................................... 10
Federal Rule of Civil Procedure 23(e)(2)(C) .............................................................. 23
Rule 23(e)(2) ..................................................................................................................... 13
Rule 23(e)(2)(A) ................................................................................................................ 13
Rule 23(e)(2)(B) ................................................................................................................ 18

**CONSTITUTIONAL PROVISIONS**

U.S. Const. Art. III, §1 .................................................................................................... 31
U.S. Const., amend. V ...................................................................................................... 28
U.S. Const., Art. I, § 8 ...................................................................................................... 28
U.S. Const., Art. IV, §4 .................................................................................................... 32

**TREATISES**

1 Newberg and Rubenstein on Class Actions § 2:4 (6th ed) ..................................... 45
Daniel Farber, *Another View of the Quagmire: Unconstitutional Conditions and Contract Theory*, 33 Fla. St. L. R. 913, 917 n. 18 (2006) ........................................................................................................ 28
Federalist no. 78 (Hamilton), THE FEDERALIST PAPERS, ed. C. Rossiter (1961), p. 465. ......................................... 33
Tracy Hester, Consent Decrees as Emergent Environmental Law, 85 MO. L. R. 877 , 894 (2020) .......................... 32

## II.　Organization Objector-Appellants Have Standing to Appeal

The Organizations actively participated in the lower proceedings and were materially impacted by the settlement. Their constituents, who are class members, have interests that warrant proxy representation. Any of these reasons, while discretionary, suffice for appellate standing. Together, they provide a strong justification for this appeal.

## A. Organization Objector-Appellants Meaningfully Participated in Lower Court Proceedings

Exceptions to the general rule of party-only appeals occur when "(1) the appellant, though not a party, participated in the district court proceedings, and (2) the equities of the case weigh in favor of hearing the appeal." *Hilao v. Estate of Marcos*, 393 F.3d 987, 992 (9th Cir. 2004). Participation must be "meaningful." *United States ex rel. Alexander Volkhoff, LLC v. Janssen Pharmaceutica N.V.I*, 945 F.3d 1237, 1241 (9th Cir. 2020).

The Organizations were actively involved in the proceedings. The Approval Order names each, though their objections didn't sway the judge (1-ER-7, 1-ER-9). LSPC's Ms. Walters, objecting to the settlement at the fairness hearing, was unopposed by Plaintiff-Appellees and overcame Defendant-Appellees' objection (3-ER-258, 3-ER-270, 3-ER-274, 3-ER-275-278). Mr. Lindsay-Poland testified for AFSC (3-ER-278-280). Written objections were filed by AFSC, Critical Resistance, NAMI Alameda County, and LSPC (5-ER-1065, 6-ER-1228, 6-ER-1229, 6-ER-1230). Together, they also filed an Objection brief (6-ER-1231-1269).

Participation by the Organizations was quite unlike the situation in *Citibank Int'l v. Collier-Traino, Inc.*, 809 F.2d 1438 (9th Cir. 1987) relied on by Defendant-Appellees (Defendant-Appellees' Answering Brief, hereinafter "DAAB," 36). In that case, a bank "chose not to intervene, join, or *make an appearance* to contest jurisdiction, even though it had actual knowledge of the proceedings and their substance" *Id.* at 1441 (emphasis added). The bank "deliberately" chose not to participate in proceedings (Id. at 1439). In stark contrast, in the present litigation, the Organizations tried to participate as much as possible through written objections and oral hearings. Intervention would have been futile since individual class members were denied a motion to intervene (13-ER-3264-3293, 14-ER-3297-3432; SER-133,142-145). Under the circumstances, the Organizations' participation was as extensive as practically possible and meaningful.

Defendant-Appellees present a contorted reading of *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021 (N.D. Cal. 1999) in support of their argument against appellate standing (DAAB, 36). That case supports the standing of the Organizations here. The *San Francisco NAACP* decision struck objections by individuals

and an organization with no discernible connection to the litigation; it upheld filing of objections from three community organizations because permitting them to be heard served the public interest. Id. at 1033. That is true here too.

In *Keith v. Volpe*, the nonparty-appellant participated "by filing a Memorandum of Points and Authorities and participating in oral argument." *Keith v. Volpe*, 118 F.3d 1386, 1391 (9th Cir. 1997). The panel explained: "equities clearly weigh in favor of hearing this appeal. '[T]he equities supporting a nonparty's right to appeal . . . are especially significant where [a party] has haled the nonparty into the proceeding against his will, and then has attempted to thwart the nonparty's right to appeal by arguing that he lacks standing.'" *Ibid.* (internal citation omitted). As haling into court is an instance that "especially" marks a set of facts as being equitably disposed toward standing, that logically implies that such haling does not exhaust the equitable factors. Haling is sufficient but unnecessary. In this case, the situation of the organizations' constituents equates to "haling" since the consent decree applies to anyone in Santa Rita Jail, now or in the future.

B.     The Material Interests of Organization Objector-Appellants, and their Employees, Members, and/or Service-Beneficiaries, Are Impacted By the Settlement

Employees, members, and/or service beneficiaries of the non-profit Organizations include unnamed class members whose personal participation would be impracticable and unduly burdensome. Stigmas surrounding incarceration and the risk that one could be waiving constitutional rights against self-incrimination strongly disincentivizes persons from coming forward as formerly incarcerated persons. Additionally, disparately-impacted communities tend to have greater involvement with the criminal justice system on an ongoing basis, making it likely that persons impacted in the past will be affected in the future. Currently incarcerated persons risk retaliation for speaking out. Consequently, many absent class members are legitimately fearful to speak individually. Organizations served a functional and equitable role as proxy representatives for unnamed class or subclass members who cannot practically voice their objections.

Furthermore, the Organizations have incurred and expect to incur material expenses due to the consent decree. Inadequate relief for any

8

legitimate claims of affected persons translates into increased staff time and associated expenses for operations.

The Second Circuit ruled that a nonparty's interests materially affected by a suit can justify appellate standing. *Hispanic Society of New York City Police Dept. Inc. v. New York City Police Dept.*, 806 F.2d 1147 (2d Cir. 1986) extended *Devlin*[1] to hold that a nonparty may appeal if it has an interest affected by the trial court's judgment, at least in the case of an appeal of a motion to intervene. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 931 F.2d 177 (2d Cir. 1991), extended this beyond the context of an appeal from a motion to intervene: an appeal by union affiliates was allowed to proceed because of the affiliates' contractual interest in an order enforcing new election rules, even when they hadn't attempted to intervene. In *Kaplan v. Rand*, 192 F.3d 60 (2d Cir. 1999), a nonparty shareholder could appeal attorney fee awards, considered an "affected interest." The Second Circuit, thus has been expansive in applying the principles of *Devlin*; the Seventh Circuit has gone otherwise. *Shakman v. Clerk of Cir. Ct. of Cook Cnty.*, 969 F.3d 810

---

[1] *Devlin v. Scardelletti*, 536 U.S. 1 (2002)

(7th Cir. 2020). The expansive approach is preferable, giving appellate courts flexibility  to do justice.

## III. District Court Abused Its Discretion in Deeming The Settlement Fair, Adequate And Reasonable

### A. The District Court Was Required to Apply Heightened Scrutiny to the Consent Decree and Did Not Do So

The court must rigorously scrutinize class settlements, investigating potential collusion and examining all elements under Federal Rule of Civil Procedure 23(e), and "give a reasoned response to all non-frivolous objections" and "adequately ... develop the record to support its final approval decision." *SFBSC Mgmt.*, 944 F.3d at 1043 (quoting *Allen*, 787 F.3d at 1223-24 and *Dennis*, 697 F.3d at 864); *In re Bluetooth*, 654 F.3d at 947.

Within settlement, the judge must provide "undiluted, even heightened, attention" to class certification requirements *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997). The judge is to "exercise the highest degree of vigilance in scrutinizing proposed settlements of class actions." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006)

(quoting *Reynolds*, 288 F.3d at 279); *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 555 (7th Cir. 2017) (class certification and settlement were flawed; the settlement only rewarded counsel fees without class benefits, and the injunctive relief offered was illusory.)

The 2018 update to Federal Rule of Civil Procedure 23(e)(2), intended to clarify procedures for class action settlements, outlines criteria to judge fairness and adequacy. Regrettably, Judge Cousins neglected to apply the Federal Rules governing class settlements, amounting to abuse of discretion in settlement approval. Appellees wrongly downplay the need for meticulous evaluation. The Consent Decree doesn't satisfy Rule 23(e)(2) requirements. Attorneys and class representatives inadequately served the class, reflected by discontented member letters. Negotiations, possibly not at arm's length, seemed to unduly favor the County and Class Counsel, denying class members promised benefits.

Relief provided for the class in the Decree is illusory, falling short of adequately addressing the needs of mentally ill individuals. The County's failure to fulfill its obligations a year after approval raises

doubts about the feasibility and sincerity of its promises. The situation becomes even more disconcerting when the County implies it may be unable to meet its obligations.

Considering these deficiencies, the Settlement Approval lacks the thoroughness required by Rule 23(e)(2). Class members deserve an equitable resolution that addresses their needs and rights rather than leaving them without relief.

**B.     Hundreds of Class Members Have Complained About the Inadequate Representation of Class Counsel and The Representatives and Have Gone Unheard**

"Rule 23(e)(2) requires the court to consider whether 'the class representatives and class counsel have adequately represented the class" and whether the settlement "was negotiated at arm's length[.]" Fed. R. Civ. P. 23(e)(2)(A)-(B); see *McKinney-Drobnis*, 16 F.4th at 607." *Negrete v. Conagra Foods, Inc.*, 2022 U.S. Dist. LEXIS 21915, *13-14.

1.     <u>Class Counsel</u>

This Court has found that class counsel did not provide adequate representation under Rule 23(e)(2)(A) in cases presenting conflict of interest, absence of fair and adequate protection of class interests by

representatives or counsel, or lack of value of the settlement for class members.

*Radcliffe v. Hernandez*, 715 F.3d 1157 (9th Cir. 2013), emphasized that requiring adequate class counsel is rooted in due process and class members must be afforded adequate representation before a judgment can bind them. In *Koby v. ARS Nat'l Servs., Inc.*, 846 F.3d 1071 (9th Cir. 2017), the court found that the settlement was not fair, reasonable, and adequate under Rule 23(e)(2) because its relief lacked value to class members.

Due process "requires that the named plaintiff at all times adequately represent the interests of the absent class members." *Phillips Petroleum Co. v Shutts, et al.*, 472 U.S. 797, 811-812 (1985). Courts have remarked on the tendency of settlements to yield benefits for stakeholders *other than* the class: Class counsel "support the settlement to get fees; the defendants support it to evade liability; the court can't vindicate the class's rights because the friendly presentation means that it lacks essential information." *Kamilewicz v. Bank of Boston Corp.*, 100 F.3d 1348, 1352 (7th Cir. 1996). Thus "objectors play an essential role in judicial review of proposed settlements of class

actions and why judges must be both vigilant and realistic in that review." *Pearson*, 772 F.3d at 787; *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 556 (7th Cir 2017).

Appellees' stance on unchallenged class representatives' adequacy findings is wrong. As argued in Objections and Appellants' briefs, plenty of evidence indicates poor class representation, with class members' complaint letters being the most compelling. Despite claims of diligence from class counsel and district court, dissatisfaction among clients cannot be ignored and should significantly sway the evaluation of class representative adequacy.

Appellees' partial reference to the 2018 Amendment's Advisory Committee Note inadequately guides Rule 23(e)(2)(A) evaluation. The court's probe must go beyond litigation conduct and pre-settlement negotiations. Exhaustive inspection is essential to confirm comprehensive investigation, consideration of all positions, and a strong foundation for settling terms.

As demonstrated in *Musgrove v. Jackson Nurse Professionals*, LLC, 2022 U.S. Dist. LEXIS 112339 (C.Dist. Cal.), Rule 23(e)(2) mandates deeper exploration of the record to determine if the parties

genuinely engaged in a comprehensive investigation and showed a sound basis for the settlement terms. The court must not overlook these elements when assessing the settlement's fairness and adequacy.

Evidence suggests class counsel did not adequately fulfill their duties. A more thorough evaluation is essential to ensure the class members' interests are genuinely represented and that the settlement truly serves their interests.

## 2. Class representatives

Rule 23(e)(2) also requires the court to analyze whether class representatives adequately represent the class. Appellees rely on the argument that the objectors did not "appeal the class certification order deeming the named plaintiffs adequate representatives of the class." (Plaintiff-Appellees Answering Brief, "PAAB," 36).

The matter is often addressed in the Motion for Class Certification. See *Musgrove v. Jackson Nurse Professionals, LLC*, 2022 U.S. Dist. LEXIS 112339. However, adequacy review isn't confined to certification nor is it waived if unchallenged then: 23(e)(2)(A) requires a judge to re-evaluate adequacy when approving a settlement.

"If the class settlement does not provide 'effectual relief' to the class and its 'principal effect' is to 'induce the defendants to pay the class's [sic] lawyers enough to make them go away,' then the class representatives have failed in their duty under Rule 23 to 'fairly and adequately protect the interests of the class'... [a]nd if the class representatives have agreed to a settlement that provides meaningless relief to the putative class, the district court should refuse to certify or decertify the class." *In re Subway Footlong Sandwich Mktg. & Sales Practices Litig.*, 869 F.3d 551, 556 (quoting *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752-53 (7th Cir. 2011)).

## C. The District Court Turned a Blind Eye to Evidence of Collusion

Rule 23(e)(2)(B) requires  negotiation conducted at arm's length. This Circuit generally finds a settlement is not negotiated at arm's length when there is evidence of collusion.

"Courts may find fraud or collusion (1) 'when counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded,' (2) 'when the parties negotiate a 'clear sailing' agreement

16

providing for the payment of attorney's fees separate and apart from class funds . . .;' and (3) 'when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.'" *De Bernardi v. City & Cty. of San Francisco*, 2021 U.S. Dist. LEXIS 102721, *17-18. (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d at 947)

In *Briseño v. Henderson* 998 F.3d 1014 (9th Cir. 2021), this court reversed the settlement approval, finding the settlement was not negotiated at arm's length. The court emphasized that under the revised Rule 23(e), federal courts must scrutinize attorneys' fees for potential collusion that shortchanges the class, even in post-class certification settlements.

Accordingly, this court must review the "award of attorney's fees and costs . . . as well as [the] method of calculating the fees" for abuse of discretion. *In re Wells Fargo & Co. S'holder Derivative Litig.*, 845 Fed. Appx. 563, 564 (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)) (affirming district court revisions of attorneys fees after considering results achieved, risk and burden endured, similar cases, and lodestar cross-check).

"No class action settlement that yields zero benefits for the class should be approved, and a class action that seeks only worthless benefits for the class should be dismissed out of hand." *In re Subway* at 556.

### a) *Class Counsel are Amply Rewarded*

Plaintiff-Appellees argue that there was no collusion because they swore that "no aspect of Plaintiffs' fee demand was discussed until after the substantive injunctive terms were final and approved by the County's Board of Supervisors." (PAAB 43) Additionally, the Plaintiff-Appellees indicate "two additional mediations before Magistrate Judge Beeler" to support their argument concerning attorney's fees. (PAAB 43)

True, a court has found lack of collusion *partially* because "the Settlement was facilitated by experienced, well-qualified counsel…who participated in…two day-long mediations[.]" *Zuern v. IDS Prop. Cas. Ins. Co.*, 2021 U.S. Dist. LEXIS 99951, *5-6. However, the query does not end there. The *Zuern* court looked at whether "the Settlement provide[d] substantial benefits to Settlement Class Members and such benefits are not disproportionate to the attorneys' fees and expenses sought[.]" *Id.*

b) *Clear Sailing Provision*

In *Espinosa v. Ahearn*, 926 F.3d 539 (9th Cir. 2019), this Circuit directly addressed the definition of a "clear sailing" provision, describing it as an agreement by the defendant not to object to an award of attorney's fees. In *Epic Games, Inc. v. Apple, Inc.*, No. 21-16506 (9th Cir. Apr. 24, 2023), the court again defined a clear sailing provision, reiterating the need for heightened scrutiny when such is included in a settlement.

This Circuit has consistently expressed concern about potential for collusion when clear sailing provisions are included in a class action settlement. *Kim v. Allison*, 8 F.4th 1170 (9th Cir. 2021), emphasized that the judge must closely examine and develop a record to support an approval decision. *Roes v. SFBSC Mgmt.*, 944 F.3d 1035 (9th Cir. 2019), reiterated that clear sailing provisions are "disfavored" and can be "important warning signs of collusion."

Despite the parties stipulating on Class Counsel's fees, the approval order didn't address or analyze collusion potential as required by Rule 23(e)(2) and precedent. There's no reference to the agreed fees or evidence to back Judge Cousin's presumption of no collusion.

Despite the County's year-long inaction, class counsel has been
reluctant to enforce the Decree, resulting in minimal progress; yet, both
parties agreed to increase the funds class counsel can request during
monitoring (Dkt # 515), prioritizing legal representatives over the
urgent needs of the incarcerated..

Concerns over collusion intensified with the County hinting at
possibly not meeting Consent Decree obligations. This failure won't
impact the already completed $2,150,000 payout to class counsel.

Unfortunately, as class counsel raises their rates without tangible
results, the County continues to procrastinate and dodge its obligations.
This impasse leaves those behind bars enduring needless suffering,
while any supposed benefits of the Decree remain elusive.

### D.   Contrary to What the Court Found, the Consent Decree Does Not Provide Adequate Relief

Rule 23(e)(2)(C) requires that class relief be adequate. This Circuit
has found that class members were not provided adequate injunctive
relief under the Federal Rules of Civil Procedure 23(e)(2)(C) in cases
where the settlement agreement raised red flags, the district court

failed to estimate the value of the settlement's injunction, or the relief provided to the class was minimal or worthless.

In *Briseno,* the court found error in approving a settlement agreement raising "a squadron of red flags." *Briseno* at 1019. Specifically, the court held that the judge failed to apply the revised Fed.R.Civ.P. 23(e)(2) standard, requiring courts to scrutinize settlement agreements for potentially unfair collusion in the distribution of funds between the class and their counsel. Additionally, the court held that the district court erred by failing to scrutinize the injunction's value. *Id.*

Despite Appellees' argument that the case solely sought injunctive relief, not monetary compensation, the settlement's value still warrants scrutiny. Lack of monetary relief, while relevant, shouldn't exempt settlements from scrutiny.

In injunctive relief cases, potential long-term impacts on impacted individuals' rights and welfare of the wider community are crucial. The effectiveness of relief and its ability to remedy grievances must be rigorously evaluated. This review can expose negotiation discrepancies or concessions, ensuring good faith actions and preventing undue advantages. A rigorous settlement review upholds the justice

system's integrity and ensures fairness. Regardless of relief type, transparent accountability guarantees the settlement benefits all involved parties.

In *Koby,* this Court found that the settlement should not have been approved because there was no evidence that relief afforded by the settlement had any value to class members. The court noted that the settlement's *injunctive relief* was worthless to most class members because it dictated disclosure communications the defendant must make for two years. *Koby,* 846 F.3d 1071. In *Lowery v. Rhapsody Int'l,* No. 22-15162 (9th Cir. June 7, 2023), this Court reversed an award of attorneys' fees to plaintiffs' counsel because class members obtained no meaningful injunctive or nonmonetary relief in the settlement. The court held that the touchstone for determining the reasonableness of attorney's fees in a class action under Federal Rule of Civil Procedure 23 is benefit to the class. Here, the benefit is minimal, at best.

Failing to scrutinize the settlement's injunctive relief's adequacy was reversible error. While initially advocating for mentally ill inmates, the settlement doesn't implement mental health services. The discrepancies between relief and class definition, as per Koby at 1079,

required examination and cast doubts on the settlement's suitability for affected parties.

Additionally, the settlement's move to hire hundreds of correctional officers adversely impacts class members. Favoring punitive measures over rehabilitative ones, it leaves mentally ill members devoid of pledged mental health services. Overlooking proper care for incarcerated mentally ill individuals prolongs a cycle of neglect, hindering rehabilitation and societal reintegration. The settlement doesn't address its intended issues.

The absence of thorough settlement scrutiny allows key flaws to detrimentally affect class members. An in-depth examination would unveil its deficiencies and prompt necessary revisions for truly safeguarding class members' rights and well-being.

## IV. Constitutional Structure is Foundational for Analyzing the Judicial Power

The constitutional limitations on magistrate jurisdiction are severally necessary and cumulative. Magistrate judges are delegated certain functions of district courts' authority, subject to the

Case: 22-15579, 08/02/2023, ID: 12767078, DktEntry: 68, Page 24 of 47

requirements of 28 U.S.C. §636. This statute is governed by the "judicial power of the United States" in Section 1 of Art. III of the Constitution; the power of Congress under that section, and under Art. I, Section 8, to "constitute" and to "ordain and establish" inferior Tribunals, respectively; and the necessary and proper clause[2]. Additionally, the due process clause[3] requires that a person's liberty not be deprived without due process of law. Although the personal jurisdiction requirement that adheres to the Fifth Amendment can be waived voluntarily by consent, expressly or impliedly, the preceding structural requirements cannot.[4] As elements of the separation of powers, they determine whether federal power is wielded constitutionally.

The Supreme Court put the matter starkly:

Subject matter jurisdiction, […] is an Art. III, as well as a statutory, requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this.

---

[2] U.S. Const., Art. I, § 8.

[3] U.S. Const., amend. V.

[4] Daniel Farber, *Another View of the Quagmire: Unconstitutional Conditions and Contract Theory*, 33 Fla. St. L. R. 913, 917 n. 18 (2006) ("we generally consider nonwaivable rules to be structural provisions rather than rights. […][S]ubject matter jurisdiction cannot be waived, while personal jurisdiction can.")

24

[…][N]o action of the parties can confer subject matter jurisdiction upon a federal court. Thus, *the consent of the parties is irrelevant*. *Insurance Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 702 (1982) (emphasis added).

Justice White penned those words for eight Justices a few years after the 1979 Federal Magistrates Act expanded the authority of magistrates to encompass the all-but-plenary adjudicatory power in civil cases by consent. Magistrates' authority was not before that court; nevertheless, the proposition is instructive for making sense of the nature of their authority. The consent-based statutory requirement of §636(c) is a necessary, but insufficient, condition for validity of judicial delegation. In addition to parties' consent, and other statutory contours of the magistrate's role, exercise of power must be consistent with constitutional constraints on subject-matter jurisdiction. Delegation must be within the "judicial power" of the United States and compatible with the separation of powers.

As suggested in the Organizational Appellants' Opening Brief (OAAB 19-20), the issue of a  magistrate's jurisdictional authority is not reducible to whether the named and unnamed class members and

defendants consented to such authority. Consent is requisite, to be sure, but no amount of conduct or expression can render a magistrate's power proper if it otherwise lacks a constitutional foundation. Though the personal rights of absent class member are at stake, not only are their rights at stake; additionally, the attributes of limited "sovereignty" in Justice White's words, or of "structure" as a constitutional scholar puts it[5], are crucial. Citations offered in Appellees' Answering Briefs completely ignore this side of the question, or, worse, conflate the personal rights and structure-of- sovereignty sides of the matter, and therefore do not control the issue.

## A. The Authority of a Magistrate Judge to Exercise Full Civil Jurisdiction is Subject Matter Jurisdiction That Must Meet Constitutional Requisites

That an "inferior Court"[6] respects constitutional strictures is a matter of constitutional structure – first and foremost, separation of powers. This structure of stricture cannot be waived as if a personal, private right. Article III judicial power as exercised by Article III judges is more analogous to subject-matter jurisdiction than to personal

---

[5] Farber, *Another View of the Quagmire,* at 917 n. 18.
[6] U.S. Const. Art. III, §1.

jurisdiction. Personal jurisdiction, rooted in the liberty rights of persons, can be waived; subject matter jurisdiction cannot be waived by express or implied consent or omission. *Insurance Corp of Ireland,* 456 U.S. at 702 ("No action[…] can confer[…]"). This same rationale applies to the delegated authority of the federal judiciary; magistrates act not in the name of some non-Article III court but in the name of the district court they serve.[7] Whether office-holders properly hold and exercise judicial power is a matter of court structure, beyond the private interests of litigants.

Congress legislates on the structure and jurisdiction of inferior courts and the appellate jurisdiction of the high court.[8] It must do so in a manner not undermining the separation of powers and federalism. It cannot turn the magistrates' role into a replacement for local or state governments.[9] In this constitutional tradition, the federal judiciary's

_____

[7] Notice of the proposed settlement in the present litigation, as well as the revised notice post-approval, spoke only of the "Court" and made no mention of delegation to a magistrate. (3-ER-343-353, 11-ER-2773-2776, 12-ER-2942-2945)

[8] U.S. Const., Art. III, §1-§2.

[9] U.S. Const., Art. IV, §4.  A consent decree, whereby a federal court effectively is converted into a law-making institution in the course of litigation by private parties or, as here, private parties suing a local political division of the state, touches upon sensitive ground both of separation of powers and federalism.  "Facially, a consent decree is simply defined as an agreement between parties that a judge then enters as a judicial order or court decree." Tracy Hester, Consent Decrees as Emergent

independence is based on mutual independence of judges and political independence. Judges are mutually independent in not being answerable to one another for their tenure in office; impeachment must be handled by the federal legislative branch.[10] They are thereby politically independent without being free of checks by the political branches: appointment, confirmation, and removal for misconduct are subject to the people's representatives. This yields a judiciary, in theory, free of political pressures of the moment, yet not so detached from the government as to be above the law; nor is it a fully-autonomous priestly class, or cadre of technocrats who can hand-pick their colleagues and successors. The appropriate form of judicial independence furthers the functions of "neither FORCE nor WILL, but merely judgment."[11]

Objector-Appellants argue that conferring final decisive authority to magistrate judges in civil cases risks overstepping constitutional limits. Such delegation should be narrowly interpreted to avoid doubtful constitutional validity. Appellees' theory of a consent-based waiver

---

Environmental Law, 85 MO. L. R. 877 , 894 (2020). Beyond that surface, the deep structural issues at stake favor rigor by the courts in upholding proper boundaries, through procedural and jurisdictional constraints.

[10] U.S. Const. Art III, §1; Art. I, §3.

[11] Federalist no. 78 (Hamilton), THE FEDERALIST PAPERS, ed. C. Rossiter (1961), p. 465.

scheme fails constitutional tests as it builds upon legal fallacies in a situation where class interests aren't aligned. Appellees advocate the fiction of the magistrate's authority lifting itself up by his own bootstraps, by adducing his authoritative finding of class-representational adequacy as grounds for his authority.(DAAB, 45; PAAB, 24). "This is reasoning in a circle." *Thompson v. Whitman*, 85 U.S. 457, 467 (1873), quoting *Starbuck v. Murray*, 5 Wendell 148, 156 (1830). The *Thompson* Court found that, where a factual predicate requisite for jurisdiction of a state action was disputed, the appropriateness of affording full faith and credit to such a fact on the record was properly called into question; it would be a *petitio principii* to consider the record as self-authorizing. The context here is different; the logical circle is the same. Objector-Appellants do not claim that any and every instance of magistrates' full adjudicatory power is suspect, but in the present case's circumstances, it is.

The only occasion during litigation below when the named parties and court officials (the office of the Clerk) explicitly treated the question of magistrate jurisdiction was during the case's initial days (OAAB , 21, 27). At that point, there was no certified class, hence no formal

representation by class representatives or class counsel. When representation came to be decided on, the issue of appropriateness of delegation of judicial authority to a magistrate, was elided. Notice given to class members afforded them no opportunity to opt-out due to the type of class action at stake; that notice *did not even mention that the judge was a magistrate judge.* Instead, the notice referred to actions by "the Court"[12] – language that would lead any reader to assume the official acting for the court was a full-fledged district judge. The notice misled as to the magistrate's authority. No fraud was this, but the *effect* of misguiding the ordinarily careful observer is functionally equivalent to fraud.[13]

The Seventh Circuit's *Williams* case, to which Defendant-Appellees would have this court look for guidance[14], emphasized the importance of notice communicating the Magistrate's title. *Williams v. Gen. Elec. Capital Auto Lease, Inc.*, 159 F.3d 266, 270 (7th Cir.1998). Now, Objector-Appellants, unlike the point argued in *Williams*, are not

---

[12] Post-approval re-notice followed the same pattern.
[13] *Cf. Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) (suggesting that where an allegation of fraud in obtaining a judgment is present, an otherwise prevailing preclusion, via *res judicata*, of revisiting subject matter jurisdiction is inapplicable).
[14] DAAB, 45.

contesting the due process adequacy of notice alone . Rather, the argument here is that the  misleading notice defeats the use of representation as justification for finding implied "consent" sufficient to confer the magistrate's jurisdiction.

There was no meaningful opportunity to contest the named plaintiffs' "consent" on behalf of absent class members. No meaningful opportunity to refuse,  no valid waiver. A waiver of a right or privilege that one cannot *not* waive isn't a waiver at all; it is simply an imposed rule. That imposition contradicts the statute's consent structure. 28 U.S.C. §636(c). It also cannot meet the Constitution's structural demands regarding Congress's regulation of courts. Applied in these circumstances, the magistrate's exercise of jurisdiction would usurp Art. III judicial powers. The legal fiction of waiver is at odds with the legal fiction of consent, as though a legal chimera were resting on a castle built in the air.

The Fourth Circuit, in *McAdams*, largely focused on construing the term "parties" in §636, concluding that absent class members are not parties for that statute's purposes. *McAdams v Robinson*, 26 F.4th

149,157 (4th Cir. 2022).[15] The Fourth Circuit, however, gave no hint of examining the constitutional validity of such an interpretation. We contend, in contrast, that the assessment of the meaning of the statute must be done in light of the statute's function of meeting necessary constitutional minimums for the "ordain[ing]" of inferior courts. To the extent that a statute doesn't do so, it is invalid. *McAdams* offers no guidance in this regard.

Nor, more importantly, does *Koby*. Defendant-Appellees argue "[t]hat decision is binding on this Court until its holding is reversed *en banc* or disapproved by the Supreme Court." *Sackett v. U.S. Env't Prot. Agency*, 8 F.4th 1075, 1089 (9th Cir. 2021). However, neither Defendant-Appellees' nor Plaintiff-Appellees' interpretations of the holding in *Koby* is self-evident or rationally persuasive. One of the problems of interpreting the scope of reasoning in *Koby* goes to the heart of the matter. The opinion, when examining the constitutional validity of §636, leaps *from* the Supreme Court's recognition of the waivability of a "personal right" of "litigants in federal court [...] to

---

[15] Similarly, the Third Circuit in *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170 (3d Cir. 2012) focused its analysis on statutory construction, without addressing the Constitution.

insist upon adjudication of their claims by a judge who enjoys the salary and tenure protections afforded by Article III" *to* the suggestion that the only constitutional question is that of a "categorical prohibition" on consent waivers in class actions. *Koby v. ARS National Services, Inc.*, 846 F.3d 1071, 1078 (9th Cir. 2017). Under "usual circumstances," that panel found, a categorical prohibition is unwarranted. *Ibid.* In addressing the question of whether, in specific circumstances, the interests of named parties and absent class members may be misaligned, the panel only gestured toward the question of constitutionality under a theory of due process-based personal rights. Its reasoning did not consider the issue of whether there is an Article III requirement of a structural, nonwaivable character, rather than a personal interest, going to the matter of federal subject-matter jurisdiction. Because the *Koby* panel decided the appeal ultimately on abuse-of-discretion grounds, it indicated it did not need to decide the due process issues *in concreto*. That panel's holding does not strictly control the present case.

In *Day v. Persels & Assocs., LLC,* 729 F.3d 1309 (11th Cir. 2013), the Eleventh Circuit issued a confusing line of reasoning. It began by

recognizing – correctly – that both statutory delegation and constitutional adequacy are subject-matter jurisdictional issues. *Id* at 1316. It proceeded to find that absent class members are not "parties" under §636(c)(1), deploying a pseudo-textual reading, notwithstanding *Devlin*'s contextualized purposive approach. *Id* at 1319, citing *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002). The panel then found that Article III is met, *Day*, 729 F.3d at 1323, due to consent and/or the theory that absent class members (some of whom do not actually know of this possible avenue, even if it were practical) could intervene or collaterally attack. *Id* at 1324. To top it off, the Eleventh Circuit dismissed an amicus' due process challenge by stating that such a personal jurisdictional challenge would be waivable "unlike subject matter jurisdiction" (*Id* at 1326, internal citation omitted) – apparently forgetting that it had in prior sections of the opinion described the issues deemed waived as those of subject-matter jurisdiction. At the end of the day, as with *Koby*, the appellate court in *Day* found *substantive* defects in the approval order.

Properly construed, Appellees' cases cited in support of a lenient approach to magistrate jurisdiction are not determinative of the instant

case. The lenient approach, incompatible with constitutional structure, should be eschewed.

## B. The Personal Rights to Consent, or Refuse Consent, of Absent Class Members Were Not Waived

Plaintiff-Appellees advocate an extremely lax approach to finding implied consent. They observe that "Objectors and absent class members filed numerous objections and, after the court made substantial efforts to include absent class members, appeared before the magistrate judge at the two-day final fairness hearing to object to the terms of the Consent Decree." (PAAB, 25-26). They add: "This includes incarcerated class members represented during the final approval process by counsel for Inmate Objectors." (*Ibid.*) However, this analysis conflates various distinct situations of different subsets of the classes in this litigation.

We distinguish – leaving aside the difference between class and certified subclass[16] – between class members named as plaintiffs vs. unnamed class members; and within the unnamed (i.e. not named as

---

[16] The argument applies equally to the distinctions within a class as to the distinctions *within* a subclass: there is the distinction between named participants, unnamed participants, and completely absent members of the subclass.

plaintiffs and not certified as class representatives), those totally absent from the proceedings versus those who participate in some fashion, such as objecting. Plaintiff-Appellees elide this last distinction in their Answering Brief, just quoted. The numerous individuals jointly represented by Attorney Huang as Inmate Objector-Appellees do not by any means comprise the entirety of the unnamed class and subclass members. Absent members neither objecting nor otherwise participating in the litigation, exist in greater numbers. For the very same reasons why, as Organizational Objector-Appellants have argued, the express or implied consent of named class members did not consent on behalf of unnamed class members as a whole, a subset of unnamed class members – individuals or a mass of individual objectors – did not consent on behalf of the totally absent class members.  The conduct of an objector or of counsel representing several individual objectors does not imply anything about the consent of non-participants.

Plaintiff-Appellees' reliance on *Roell* is misplaced. (PAAB, 25). The Supreme Court found that individuals who, through counsel, participated in the proceedings had, by conduct, implied consent. *Roell,* 538 U.S. at 584 ("the record shows that [*Roell* defendants, with counsel]

voluntarily participated in the entire course of proceedings before the Magistrate Judge, and voiced no objection when, at several points, the Magistrate Judge made it clear that she believed they had consented"). The Court did not suggest that the defendants in *Roell* or their counsel could consent on behalf of other persons. In that case, active, knowing, voluntary participation was the touchstone of implied consent.[17] In contrast, the present litigation featured a situation where notice to the class – such notice being the only plausible candidate for a chance of alerting non-participants to the case's existence – described the case *as if* it were proceeding before an Article III district judge rather than a magistrate (11-ER-2773-2776, 12-ER-2942-2945). Any absent class member who didn't participate in any manner whatsoever, yet heard of the case, could not reasonably be expected to know it transpired

---

[17] The majority in *Roell* stressed the background for implied consent. "On at least three different occasions, counsel for Roell and Garibay was present and stood silent when the Magistrate Judge stated that they had consented to her authority. First, in a status teleconference[…] the Magistrate Judge stated that 'all of the other parties have consented to my jurisdiction.' […] Petitioners later filed a motion for summary judgment, which the Magistrate Judge denied, noting in her order that 'this case was referred to the undersigned to conduct all further proceedings, including entry of final judgment, in accordance with 28 U. S. C. § 636(c)(1).' […] And finally, during jury selection, the Magistrate Judge told the panel that both sides had consented to her jurisdiction to hear the case." Roell, 538 U.S. at 584, footnote.

before a magistrate. There was no proffer of consent-amenability for them to accept/refuse; their (non-)conduct implies nothing.

Plaintiff-Appellees argue that *Saucillo* stands for the proposition that, due to a failure of objectors to "rais[e] this issue or clai[m] any confusion in the lower court," as to the identity of the magistrate judge's role not being contained in notice, "it is waived." (OAAB, 26-27 n 4, citing Saucillo v. Peck, 25 F.4th 1118 (9th Cir. 2022)). However, *Saucillo* was premised on an objection about the substance – not procedure – of an approval order; the court did *not* find that an alleged waiver bound it, treating the waiver question as discretionary. *Saucillo v Peck*, 25 F.4th 1118, 1129 (9th Cir. 2022). "We may consider issues not presented to the district court" this court stated. *Ibid.*, *citing In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010). If, as the *Saucillo* opinion quipped, "an objector need not be an oracle," 25 F.4th at 1130, it stands to reason that totally absent class members too cannot be expected to display omniscience as to the jurisdictional posture of the case.

As Organizational Objector-Appellants argued in our Opening Brief, failure to specify the magistrate's role in the notice is significant

in at least two distinct respects: as a fact constituting or contributing to the special "circumstances" contemplated by *Koby*; second, as implicating the due process rights of persons affected by being denied having their case heard by an Article III judge. Even if participating objectors could be deemed to have waived their personal rights-based objections to the magistrate delegation, they could not do so for non-participants under these conditions.

## V.    Definition of Plaintive Class Does Not Comport With Current Standing Doctrine

The Plaintiff-Appellees cite a hasty remark from a revision of Newberg's treatise that claim that *TransUnion* is not "relevant" to injunctive relief. PAAB 27, *citing* 1 Newberg and Rubenstein on Class Actions § 2:4 (6th ed) (" TransUnion v. Ramirez casts significant doubt on the argument that a risk of future harm, standing alone, is sufficient to meet Article III's concrete harm requirement in a money damage, as opposed to injunctive relief, case."). However, Plaintiff-Appellees' argument and the shorter treatment in Defendant-Appellees' Brief, 40-41, are misleading. For, while the Court in *TransUnion*, dealing with a damages suit, was careful to state that the application of standing

requirements will vary depending on the nature of the remedy sought –
especially when it is a typical equitable remedy rather than damages –
nonetheless, the Court treated injunctive cases as within the ambit of
its clarified standing doctrine. The Court in *TransUnion* did not suggest
that the concrete harm requirement of standing is inapplicable to
injunctions. On the contrary, it repeatedly cited, with approval,
precedents that involved injunctive relief, such as *Lujan* and
*Summers.*[18] It relied heavily and primarily on *Lujan* to lay out the
concrete harm standard. See *TransUnion*, Part II A-B, *passim*.

Discussing the standard for injunctive relief adumbrated in
*Clapper v Amnesty International*, the *TransUnion* Court did not
suggest that meeting Article III standing principles was inapplicable to
injunctions. Instead, the Court said that material risk of future harm
must be "sufficiently imminent and substantial." *TransUnion,* slip op.
at 20, citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n. 5
(2013). The *Clapper* opinion emphasized that plaintiffs bear the burden
of showing that the risk of future harm is sufficiently demonstrated, not

---

[18] The *TransUnion* majority cited *Summers v. Earth Island Institute*, 555 U. S. 488
(2009) three times; it cited *Lujan v. Defenders of Wildlife*, 504 U. S. 555 (1992)
*nine* times.

merely "speculative." Id. at 414. In *Clapper* the Court was satisfied that demonstrating "clearly impending" and "certainly impending" risk of harm would be sufficient, though "literally certain" harm need not be found. *Id* at 414 n. 5. The Court was far from clear on just how non-speculative a showing of future harm need be. It was willing to entertain the possibility that a "substantial risk" standard may be relevant but declined to settle the matter. There, the emphasis was on "imminence." In describing *Clapper* as it did, the Supreme Court in *TransUnion* combined the substantiality and imminence aspects.

However the exact standard is articulated, the principle that plaintiffs bear the burden of demonstrating standing is indisputably settled law. Plaintiff-Appellees would have the court believe, based on a footnote in the en banc *Olean* opinion, that this court has issued a "holding" that "Article III standing for all class members is not required when [the] court is certifying [a] class seeking injunctive or declaratory relief only" (PAAB 29). In truth, the discussion on which that interpretation is based forms no part of the holding in *Olean*. It is instead an *obiter dictum*; one could almost say that it is an *obiter dictum* about an *obiter dictum*. For, as the very same footnote in *Olean*

astutely hints at, the proposition from *Mazza* which it "overruled" wasn't an essential part of the *Mazza* holding; it was a principle invoked (drawn from an earlier Second Circuit case[19]) in the articulation of a defense challenge that the court rejected, deciding instead to vacate the class certification on other grounds of error. *Mazza v American Honda Motor Co.,* 666 F.3d 581, 585, 594-595 (9th Cir. 2012). Whatever the motivation for the footnote's doctrinal analysis, it was not strictly part of the holding in *Olean* itself. *Olean Wholesale Grocery v. Bumble Bee Foods*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022) (en banc). The analysis provides but limited guidance. It describes some extreme standing notions, rejecting both of the following: a hypothetical rule that applies non-class standing requirements to every plaintiff to a class context as well; and the statement that "no class may be certified that contains members lacking Article III standing." *Ibid*. Those formulations would ignore the nuances distinguishing damage

---

[19] *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir.2006). Still, the *Mazza* panel's handling of the standing question is probably no longer good law after *TransUnion*. "Although it is not a simple or a clear-cut matter, we conclude, in the light of our prior precedent, that Honda's objection that state law gives a right to monetary relief to a citizen suing under it *without a more particularized proof of injury* and causation ... is not enough to preclude class standing here." *Mazza,* 666 F.3d at 595 (internal citations removed; emphasis added).

suits and equitable relief entirely. There exists a large space for judicial craftsmanship between the latter formulations and the no-less-extreme suggestion that *one* plaintiff with particularized standing will suffice in *any* class context. Surely there are limits – limits that will affect standing – to how loosely the class the named individual purports to represent may be defined.

Objector-Appellants are *not* arguing that a lone named plaintiff never suffices to confer standing on a suitably-defined class. Nor do they claim standing doctrine is indifferent to the real differences between damage-seeking lawsuits and claims seeking equitable remedies. Instead, they argue that attention to class definition is essential to meeting the requirements of Article III standing. Under the ever-evolving jurisprudence clarifying those requirements, Organizational Objector-Appellants contend that the complaint and class certification did not adequately show the concreteness and particularity of the harm expected to be visited upon the classes *as they were vaguely defined*. A bold path comporting with constitutional requirements can fix this problem: decertification and, if a suitable

definition can be found by the district court, recertification so as to put the action on surer ground.

## VI. Conclusion

A federal appellate court has "the authority to identify and apply the correct legal standard, whether argued by the parties or not" *Thompson v. Runnels*, 705 F.3d 1089, 1098 (9th Cir. 2013) cited approvingly by *Saucillo v. Peck*, 25 F.4th at 1130 (9th Cir. 2022). By disregarding the explicit mandatory provisions of Rule 23, the lower court didn't apply the correct legal standard. Moreover, the approval order's substantive determination of fairness, adequacy, and reasonableness significantly erred. There was an abuse of discretion in law and findings under law application.

Moreover, the exercise of jurisdiction was flawed due to the magistrate judge failing to obtain consent sufficient to confer the powers exercised. In the circumstances of the present litigation, where interest-alignment of subsets of the subclass and interest-alignment of subsets of the class are so doubtful, it is questionable whether consent to magistrate jurisdiction could ever be obtained adequate to

constitutional requirements. It is clear that any delegation should have been sought more cautiously than it was.

Issues identified by the Organization-Appellants are basic to the class action process: consent to magistrate jurisdiction in a class action; class definition's effect on class standing; the rules governing approval of class settlements. Even the substantive questions about the settlement's adequacy, fairness, and reasonableness take their import from the structural characteristics of class action litigation; such settlements require the rules be applied with particular care due to the dangers inherent in class settlement proceedings. These are issues appropriate for an appellate court to consider, *sua sponte*, regardless of the standing of particular appellants. Even if the Organizations were to be dismissed for lack of standing, the core issues would remain issues for this court to resolve. Moreover, this court would remain duty-bound to resolve the jurisdictional issues.

The solution to the magistrate jurisdictional issue and the plaintiff's standing is straightforward: vacate the approval order and remand the case to the district court, for assignment to an Article III

judge, who can re-certify a more aptly-defined class. The plaintiffs' case deserves hearing and possibly settlement, just not in its current form.

DATED: August 2, 2023

Respectfully Submitted,

/s/ Kellie Walters

Kellie Walters
Eric C. Sapp
LEGAL SERVICES FOR PRISONERS
WITH CHILDREN
*Attorneys for Objector-Appellants*
*American Friends Service Committee,*
*Critical Resistance Oakland, Legal*
*Services for Prisoners with Children,*
*National Alliance on Mental Illness*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** _____22-15363_____

I am the attorney or self-represented party.

**This brief contains _____7,876_____ words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App.

P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5),
Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[X] complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [X] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**_____s/ Kellie Walters_____ **Date** _____8/2/2023_____
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/18*